# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Harley Dean Meyer, | Case No. 15-cv-2564 (SRN/HB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Thomas Haeg, Hennepin County Referee, in his official capacity; Stephen C. Aldrich, Hennepin County District Judge, in his official capacity; Virginia Ekola, Attorney, in her official capacity as an officer of Hennepin County District Court; David Gronbeck, Attorney, in his official capacity as an officer of Hennepin County District Court; Marilyn Kaman, Hennepin County District Judge, in her official capacity; Sara Burmeister, Oak Creek High School Superintendent, in her official capacity; Michael Read, Oak Creek High School Principal, in his official capacity; Dean Maus, Referee, in his official capacity; Jamie L. Anderson, State of Minnesota Judge, in his or her official capacity; Colleen A. Harris-Pearson; Allan Lindsay; Diane Lindsay; J. Does 1 and 2, in their official capacities (4th Judicial District); HealthPartners; Yuma Union High School District; James T. Swenson, Hennepin County 4th Judicial District Judge; Marybeth Dorn, Hennepin County Referee; Judge Lucy A. Wieland, in her official capacity; Judge Denise D. Reilly, in her official capacity; Judge Douglas L. Richards, in his official capacity; Judge Edward Toussaint, in his official capacity; Judge Charles A. Porter, in his official capacity; Judge Kevin G. Ross, in his official capacity; Marnette Hoisve, in her | |

official capacity; Dr. Michael Fuhrman, of
HealthPartners; Dr. Sonia Mosch, of
HealthPartners; Janey Nelson, of Mound
Psychological Services; Jean Peterson, in
her official capacity; Dr. John Prybl, of
HealthPartners; J. Doe 3, in his or her
official capacity (4th Judicial District-Court
Administrator?); J. Does 4-8, in their
official capacities (Hennepin County);
J. Doe 9 and 21, in their official capacities
(State of Minnesota); J. Does 10, 20, and 40,
in their official capacities (HHS-Regional
Office); J. Doe 11, in his or her official
capacity (State Department); J. Does 12 and
13 (US Bank); J. Does 14, 15, and 16, in
their official capacities (Arizona
Department of Economic Security Division
of Support Enforcement); J. Doe 17, in his
or her official capacity (Yuma Union School
District); J. Doe 18, in his or her official
capacity (IRS); J. Doe 19 (Wells Fargo
Bank); J. Doe 22-28 (State of Minnesota -
Minnesota Supreme Court); J. Doe 31, in his
or her official capacity (State auditor); J.
Doe 32, in his or her official capacity
(Minn. DHS auditor); J. Doe 33, in his or
her official capacity (HHS auditors from
regional office); J. Doe 34, in his or her
official capacity (State of Minnesota -
executive policy maker); J. Doe 35 (Non-
Government Agency); J. Doe 36 (Unknown
Company); J. Doe 38, in his or her official
capacity (State of Minnesota); J. Doe 39, in
his or her official capacity (Non-
Government Agency); J. Doe 47, in his or
her official capacity (State of
Minnesota?/Hennepin County?); J. Does 53-
82; and J. Does 83-91, in their official
capacities,

Defendants.

2

Harley Dean Meyer, Naewna Newspaper, % Ladapa Tiwasingha, 96 Moo 3 Vibavadee Randsit Road, Laksi, Bangkok, Thailand 10210, pro se

Steven M. Phillips and Steven C. Kerbaugh, Anthony Ostlund Baer & Louwagie P.A., 3600 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402; and Ann-Marie Anderson, Wright Welker & Pauole, PLC, 10429 South 51st Street, Suite 285, Phoenix, AZ 85044; for Yuma Union High School District

Bryon G. Ascheman, Burke & Thomas, PLLP, 3900 Northwoods Drive, Suite 200, Arden Hills, MN 55112, for Colleen A. Harris-Pearson

Stacy A. Broman, Meagher & Geer, PLLP, 33 South Sixth Street, Suite 4400, Minneapolis, MN 55402; and Ronald S. Stadler, Mallery & Zimmerman, S.C., 731 North Jackson Street, Suite 900, Milwaukee WI, 53202; for Sara Burmeister and Michael Read

Jonathan P. Norrie and Amie E. Penny Sayler, Bassford Remele, 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402, for U.S. Bank, N.A.

Ellen B. Silverman and Ashley M. DeMinck, Hinshaw & Culbertson LLP, 333 South Seventh Street, Suite 2000, Minneapolis, MN 55402, for Wells Fargo Bank, N.A.

David M. Wilk and Angela Beranek Brandt, Larson King, LLP, 2800 Wells Fargo Place, 30 East Seventh Street, St. Paul, MN 55101, for HealthPartners, Inc.

Erin M. Secord, Assistant United States Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for J. Does 10, 11, 18, 20, 33, and 40

Andrew Tweeten, Assistant Attorney General, 445 Minnesota Street, Suite 1100 St. Paul, MN 55101, for Referee Thomas Haeg, Judge Stephen C. Aldrich, Judge Marilyn Kaman, Referee Dean Maus, Judge Jamie L. Anderson, Referee Marybeth Dorn, Judge James T. Swenson, Judge Lucy A. Wieland, Judge Denise D. Reilly, Judge Kevin G. Ross, Judge Edward Toussaint, Jr., Judge Douglas L. Richards, Judge Charles A. Porter, Governor Mark Dayton, Minnesota Fourth Judicial District Court, and Minnesota Supreme Court

David Gronbeck, Esq., 5821 Blaisdell Ave. South, Minneapolis, MN 55419, pro se

---

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on David Gronbeck's Motion to Dismiss [Doc. No.

74], Yuma Union High School District's Motion to Dismiss [Doc. No. 84], Colleen A.

Harris-Pearson's Motion to Dismiss [Doc. No. 116], Sara Burmeister and Michael Read's

Motion to Dismiss [Doc. No. 143], U.S. Bank, N.A.'s Motion to Dismiss [Doc. No. 168],

Wells Fargo's Motion to Dismiss [Doc. No. 175], HealthPartners, Inc.'s Motion to

Dismiss [Doc. No. 180], Federal Defendants' Motion to Dismiss [Doc. No. 184], and

State Defendants' Motion to Dismiss [Doc. No. 193].  The motions to dismiss were

referred to the undersigned by the Honorable Susan Richard Nelson, United States

District Judge, in Orders of Referral dated October 19, 2015 [Doc. No. 83]; October 20,

2015 [Doc. No. 91]; November 10, 2015 [Doc. No. 125]; December 11, 2015 [Doc. No.

150]; and January 7, 2016 [Doc. No. 204].  Dr. John Prybl recently filed a motion to

dismiss [Doc. No. 283], and that motion will be addressed in a subsequent report and

recommendation.

    The Defendants who have not moved to dismiss are Virginia Ekola, who filed an

Answer to the First Amended Complaint ("FAC") on December 30, 2015; Allan Lindsay

and Diane Lindsay, who filed an Answer on December 30, 2015; Marnette Hoisve;

Dr. Michael Fuhrman; Dr. Sonia Mosch; Janey Nelson; Jean Peterson; J. Does 4-8, in

their official capacities (Hennepin County); J. Doe 9 and 21, in their official capacities

(State of Minnesota); J. Does 14, 15, and 16, in their official capacities (Arizona

Department of Economic Security Division of Support Enforcement); J. Doe 31, in his or

her official capacity (State auditor); J. Doe 32, in his or her official capacity (Minn. DHS

auditor); J. Doe 34, in his or her official capacity (State of Minnesota - executive policy

maker); J. Doe 35 (Non-Government Agency); J. Doe 36 (Unknown Company); J. Doe

38, in his or her official capacity (State of Minnesota); J. Doe 39, in his or her official

capacity (Non-Government Agency); J. Doe 47, in his or her official capacity (State of Minnesota?/Hennepin County?); J. Does 53-82; and J. Does 83-91, in their official capacities.

## I.   Background

This action arises from a child custody dispute in 2003.  Harley Dean Meyer ("Meyer") was divorced from his wife, V.M., in 2001.  (First Am. Compl. ("FAC") [Doc. No. 136 ¶ 10].)[1]  Meyer and V.M. had one child, J.M.  (FAC ¶ 12; Sayler Decl. Ex. 1 (*Meyer v. Meyer*, File No. DC 269087, J. & Decree at 3 (Hennepin Cty. Dist. Ct. Oct. 2, 2001)) [Doc. No. 171-1].)[2]  Meyer and V.M. were awarded joint legal and physical custody of J.M.  (FAC ¶ 11; Sayler Decl. Ex. 1 (J. & Decree at 5).)

On July 10, 2002, V.M. filed a motion for ex parte relief in Hennepin County Family Court asking the court to prohibit Meyer from moving J.M. to Arizona or removing him from Minnesota.  (Sayler Decl. Ex. 2 (Mot. at 1, *Meyer v. Meyer*, File No. 269087 (Hennepin Cty. Dist. Ct. July 10, 2002)) [Doc. No. 171-2].)  On July 16, 2002, the Honorable James T. Swenson granted the requested relief and set a hearing date of October 14, 2002, before Referee Marybeth Dorn.  (FAC ¶ 491; Sayler Decl. Ex. 3 (*Meyer v. Meyer*, File No. 269087, Order at 1-2 (Hennepin Cty. Dist. Ct. July 16, 2002)) [Doc. No. 171-3].)  That same day, V.M. filed a notice of hearing and motion.  (Sayler

---

[1] Meyer's 267-page First Amended Complaint [Doc. No. 136] is the operative pleading in this matter.

[2] The Court considers the Hennepin County court orders and other documents cited in this section as matters of public record and materials necessarily embraced by the FAC, to the extent those materials are not inconsistent with the allegations of the FAC.  *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

Decl. Ex. 4 (Notice & Mot., *Meyer v. Meyer*, File No. 269087 (Hennepin Cty. Dist. Ct. July 16, 2002)) [Doc. No. 171-4].)  On July 29, 2002, Meyer's attorney, Roderick N. Hale, wrote a letter to the Honorable Stephen C. Aldrich, in which Hale stated he was enclosing a motion and an affidavit from Meyer setting forth Meyer's concerns about V.M.'s ability to parent J.M.  (Sayler Decl. Ex. 5 (Hale Letter, July 29, 2002) [Doc. No. 171-5].)  The letter was sent via facsimile transmission.  (*Id.*)  There is nothing in the record indicating whether the motion referenced in Hale's letter was actually filed, but the motion is referenced in a subsequent court order.  (*See* FAC ¶¶ 23, 47.)  Meyer alleges that he instructed Hale not to file a motion for a change of custody.  (FAC ¶ 162.A.i.2.i.)  On July 30, 2002, V.M.'s attorney, Virginia K. Ekola, wrote a letter to Judge Aldrich stating she had received a copy of Hale's letter but that there was no motion enclosed.  (Sayler Decl. Ex. 6 (Ekola Letter, July 30, 2002) [Doc. No. 171-6].)

On August 13, 2002, V.M. filed a motion asking the Honorable Marilyn J. Kaman to enforce the July 16, 2002, order; to return J.M. to V.M. immediately; and for various other types of relief.  (FAC ¶ 34; Sayler Decl. Ex. 7 (Notice & Mot., *Meyer v. Meyer*, File No. 269087 (Hennepin Cty. Dist. Ct. Aug. 13, 2002)) [Doc. No. 171-7].)  Judge Kaman held a hearing on V.M.'s "emergency motion" the next day on August 14, 2002.  (Sayler Decl. Ex. 8 (*Meyer v. Meyer*, File No. 269087, Order at 1 (Hennepin Cty. Dist. Ct. Aug. 14, 2002)) [Doc. No. 171-8].)  Meyer appeared by speakerphone from Arizona and was represented by Hale.  (FAC ¶ 601; Sayler Decl. Ex. 8 (Order at 1).  Judge Kaman issued an order requiring Meyer to return J.M. to V.M.  (FAC ¶ 611; Sayler Decl. Ex. 8 (Order at 1-2).)

Referee Thomas Haeg held a hearing on April 30, 2003, on various motions

brought by Meyer and V.M.  (FAC ¶ 12.D.1; Sayler Decl. Ex. 9 (*Meyer v. Meyer*, File

No. 269087, Order at 1 (Hennepin Cty. Dist. Ct. May 29, 2003)) [Doc. No. 171-9].)

Meyer was not present at the hearing, but was represented by Gronbeck.  (*Id.*)  On

May 29, 2003, Referee Haeg issued an order on the motions, requiring psychological

evaluations and parenting assessments for Meyer and V.M., denying Meyer's request to

terminate the appointment of a guardian ad litem,[3] and continuing an evidentiary hearing

to September 17, 2003.  (*Id.* at 2-4.)  Hennepin County served the order on Gronbeck that

day by facsimile transmission to his office.  (Sayler Decl. Ex. 10 (Aff. of Service, *Meyer*

*v. Meyer*, File No. 269087 (Hennepin Cty. Dist. Ct. May 29, 2003)) [Doc. No. 171-10].)

On August 4, 2003, the guardian ad litem filed a letter requesting ex parte

emergency relief because Meyer had not returned J.M. from a vacation in Arkansas, in

contravention of the May 29, 2003, order.  (Sayler Decl. Ex. 11 (*Meyer v. Meyer*, File

No. 269087, Order at 1 (Hennepin Cty. Dist. Ct. Aug. 4, 2003)) [Doc. No. 171-11].)  The

guardian ad litem also had reason to believe that Meyer had taken J.M. to a therapist in

Arizona, who had filed a report with an Arizona child protection agency.  (*Id.*)  Referee

Haeg entered an ex parte order asking the Arizona Attorney General's Office to share any

information in the possession of any state agency concerning V.M., J.M., or Meyer.

(*Id.* at 1-2.)

Meyer did not return J.M. to Minnesota by August 20, 2003, which prompted

---

[3] Although the FAC does not specify the timing, the Amended Judgment and Decree of
the state court indicates the court had appointed a guardian ad litem for J.M. in mid-
August of 2002.

V.M.'s attorney, Ekola, to contact Judge Aldrich.  (Sayler Decl. Ex. 12 (*Meyer v. Meyer*, File No. 269087, Order at 1 (Hennepin Cty. Dist. Ct. Aug. 20, 2003)) [Doc. No. 171-12].) Judge Aldrich ordered Meyer to return J.M. to V.M. immediately and granted V.M. temporary legal and physical custody.  (*Id.*)

On September 15, 2003, Meyer's attorney, Gronbeck, sent a letter to Referee Haeg, asking for a continuance of the September 17, 2003 hearing. (Sayler Decl. Ex. 13 (Gronbeck Letter at 1, Sept. 15, 2003) [Doc. No. 171-13].)  Referee Haeg denied the request.  (Sayler Decl. Ex. 14 (*Meyer v. Meyer*, File No. 269087, Order at 2 (Hennepin Cty. Dist. Ct. Aug. 20, 2003)) [Doc. No. 171-14].)  The evidentiary hearing occurred as scheduled on September 17, 2003.  (FAC ¶ 12; Sayler Decl. Ex. 15 (*Meyer v. Meyer*, File No. 269087, Order at 1 (Hennepin Cty. Dist. Ct. Aug. 20, 2003)) [Doc. No. 171-15].) Gronbeck attended as Meyer's attorney, even though Meyer told him not to "because there was no motion."  (FAC ¶ 179.F.)  Meyer did not attend.  (FAC ¶ 12.C; Sayler Decl. Ex. 15 (Order Amend. J. & Decree at 1).)

On September 26, 2003, Meyer sent an ex parte letter to Referee Haeg informing him that Gronbeck did not follow Meyer's instructions to tell the court there was no motion for change of custody.  (FAC ¶¶ 24, 26.A.)  Referee Haeg wrote to Meyer directly on September 30, 2003, advising him not to engage in ex parte contact with the court, to communicate with the court only through his attorney, and to present requests for relief through motion and sworn affidavit.  (FAC ¶ 27; Sayler Decl. Ex. 16 (*Meyer v. Meyer*, File No. 269087, Letter at 1 (Hennepin Cty. Dist. Ct. Sept. 30, 2003)) [Doc. No. 171-16].)

In a twenty-five page order filed on October 29, 2003, Referee Haeg granted sole legal and physical custody to V.M. and ordered Meyer to pay child support in the amount of $520 per month.  (FAC ¶¶ 12.B, 241.C; Sayler Decl. Ex. 15 (Order Amend. J. & Decree at 22-23)) ("Amended Judgment and Decree").  Judge Aldrich approved the findings of fact and order.  (FAC ¶ 12.D.v; Sayler Decl. Ex. 15 (Order Amend. J. & Decree at 25).)  Meyer was served with the Amended Judgment and Decree by mail. (Sayler Decl. Ex. 17 (Notice, *Meyer v. Meyer*, File No. 269087 (Hennepin Cty. Dist. Ct. Oct. 31, 2003)) [Doc. No. 171-17]; Aff. of Service, *Meyer v. Meyer*, File No. 269087 (Hennepin Cty. Dist. Ct. Oct. 31, 2003)) [Doc. No. 171-17].)

## II.      Defendant David Gronbeck's Motion to Dismiss

Meyer brings a claim for misrepresentation and a claim for neglect to prevent under 42 U.S.C. § 1986 against David Gronbeck, the attorney who represented Meyer in the 2003 child custody proceedings.  (*See* FAC at 116, 125.[4])  Gronbeck moves to dismiss the claims as barred by the applicable statute of limitations, pursuant to Federal Rule of Civil Procedure 12(b)(6).

On a Rule 12(b)(6) motion to dismiss, the Court "must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader."  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[4] When information or allegations are not included in a numbered paragraph, the Court refers to the page number of the FAC.

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A court has the duty to construe liberally a pro se party's pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Generally, on a Rule 12(b)(6) motion, a court may not consider matters outside the pleadings in assessing the sufficiency of a complaint.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted).  A court may make exceptions to this rule for matters of public record, materials "necessarily embraced by" the complaint, and exhibits submitted with the complaint.  *Id.* (citations omitted).

## A.    Misrepresentation Claim

Meyer alleges the following relevant facts in support of his misrepresentation claim against Gronbeck.  Before the evidentiary hearing on September 17, 2003, Meyer told Gronbeck to inform Referee Haeg there was no motion for a change of custody. (FAC ¶ 179.A.)  Gronbeck did not do so.  (FAC ¶ 26.)  Instead, Gronbeck requested a continuance, which was denied.  (FAC ¶ 179.D.)  Gronbeck attended the hearing, even though Meyer told him not to.  (FAC ¶ 179.F-G.)  Gronbeck "pass[ed] himself off as counsel for" Meyer for the September 17, 2003, hearing.  (FAC ¶ 177.)  Gronbeck's appearance at the hearing prejudiced Meyer by creating the "illusion that the proceedings were based upon the merits" and caused Meyer's claims to be subject to res judicata and collateral estoppel through the 2003 Amended Judgment and Decree.  (FAC ¶¶ 180.C, 186.)  Meyer also was deprived of due process and incurred economic loss.  (FAC

10

¶ 180.C.)

Meyer concedes in the FAC that he had notice in September and October 2003 of the evidentiary hearing, Gronbeck's attendance and participation, and the resulting Amended Judgment and Decree.  (*See* FAC ¶¶ 24-27, 53-55, 153, 162.A.i.1., 189.C.)  On September 26, 2003, Meyer wrote a letter to Referee Haeg concerning Gronbeck's attendance at and participation in the evidentiary hearing and advising Haeg that he had not intended to file a motion for change of custody.  (FAC ¶¶ 24, 26, 153.B.)  Meyer alleges the letter put Referee Haeg on notice of Meyer's opposition to Gronbeck's actions.  (FAC ¶ 55.)  Meyer learned "shortly after" October 16, 2003, that V.M.'s attorney, Ekola, had asked Referee Haeg to file the motion for change of custody.  (FAC ¶ 162.A.i.)  Gronbeck forwarded the proposed change of custody order submitted by Ekola to Meyer.  (FAC ¶ 189.C.)

Gronbeck moves to dismiss Meyer's misrepresentation claim as time-barred by the six-year statute of limitations provided in Minn. Stat. § 541.05.  An action for misrepresentation or fraud must be commenced within six years of "the discovery by the aggrieved party of the facts constituting the fraud."  Minn. Stat. § 541.05, subd. 1(6); *see Smida v. Isanti Pines Tree Farm, LLC*, No. A15-0437, 2015 WL 7693536, at *2 (Minn. Ct. App. Nov. 30, 2015), *rev. denied* (Feb. 24, 2016).  Discovery of the fraud is governed by the reasonable person standard.  *Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 172 (Minn. 2012).  "The facts constituting the fraud are deemed to have been discovered when they were actually discovered or, 'by reasonable diligence, should have been discovered.'"  *Id.* (quoting *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985)).

It is clear from the allegations in the First Amended Complaint that Meyer had notice of the facts constituting Gronbeck's alleged misrepresentation no later than the end of October 2003.  Alternatively, Meyer could have discovered the underlying facts through reasonable diligence.  Meyer alleges no facts that would plausibly support a later accrual date.  Consequently, his misrepresentation claim is time-barred and should be dismissed with prejudice.

Furthermore, there is no basis for equitable tolling.  "The doctrine of equitable tolling permits a plaintiff to sue after the statutory time period has expired if he has been prevented from doing so due to inequitable circumstances." *Firstcom, Inc. v. Qwest Corp.*, 555 F.3d 669, 675 (8th Cir. 2009) (quoting *Pecoraro v. Diocese of Rapid City*, 435 F.3d 870, 875 (8th Cir. 2006)).  "A plaintiff must show the following to establish a need for equitable tolling: (1) diligence in pursuit of the claim; and (2) extraordinary circumstances that stood in the way." *Thompson v. Nat'l Credit Adjusters, LLC*, No. Civ. 10-2307 (SRN/FLN), 2011 WL 6003955, at *2 (D. Minn. Nov. 30, 2011) (citing *Firstcom*, 555 F.3d at 675).  Here, the allegations of the FAC establish the contrary.  Meyer did not diligently pursue his claim, and no extraordinary circumstance stood in his way.

Meyer argues in his response to Gronbeck's motion that fraudulent concealment can toll § 541.05 if the concealment could not have been discovered through reasonable diligence; there is a confidential relationship such as that between and attorney and client; and a duty exists to clarify previously-provided, misleading information.  (Pl.'s Mem. Opp'n Def.'s Mot. Dismiss at 4-5 [Doc. No. 109].)  This is not the correct standard for

fraudulent concealment.

"[T]here is a marked difference between cases where fraudulent concealment is present and cases where it is not." *Williamson v. Prasciunas*, 661 N.W.2d 645, 650 (Minn. Ct. App. 2003). Fraudulent concealment will toll a statute of limitations when (1) the opposing party made a statement that concealed a potential cause of action, (2) the statement was intentionally false, and (3) "the concealment could not have been discovered by reasonable diligence." *Williamson*, 661 N.W.2d at 650. "[I]n the absence of fraudulent concealment, the running of the statute is not tolled by ignorance of the cause of action." *Herrmann v. McMenomy & Severson*, 590 N.W.2d 641, 643 (Minn. 1999).

The FAC identifies no facts that were allegedly concealed by Gronbeck or that any potential concealment was intentional. As set forth fully above, Meyer knew the factual basis for the misrepresentation claim no later than late October 2003. Although Meyer alleges he did not understand the grounds for his claims until he attended a year of law school (FAC ¶¶ 159.C.xxi-.xxv, 160.C.iii.), a party's ignorance of the law does not toll a statute of limitations. *See Larson v. Am. Wheel & Brake, Inc.*, 610 F.2d 506, 510 (8th Cir. 1979). With regard to Meyer's allegation that he first learned about a required filing fee in 2011, the Court incorporates by reference the discussion in Part VI.A *infra* and finds this "discovery" does not provide a basis for equitable tolling.

A plaintiff is "not entitled to equitable tolling based on fraudulent concealment" when facts alleged in the complaint show that the plaintiff was aware of or had reason to know of a claim. *Thornberg v. State Farm Fire & Cas. Co.*, No. 15-2526, ---F. App'x ---

13

-, 2016 WL 1319442, at *1 (8th Cir. Apr. 5, 2016) (citing *Minn. Laborers Health &*

*Welfare Fund v. Granite Re, Inc.*, 844 N.W.2d 509, 514 (Minn. 2014) (fraudulent

concealment tolls statute of limitations only until party discovers, or has reason to

discover, cause of action)).  Dismissal is appropriate when a complaint's allegations do

not support a claim for equitable tolling.  *See Firstcom*, 555 F.3d at 675.  Meyer's

misrepresentation claim against Gronbeck is time-barred and equitable tolling does not

apply.  Accordingly, the claim should be dismissed with prejudice.

### B.     Claim for Neglect to Prevent under 42 U.S.C. § 1986

In support of his claim for neglect to prevent under 42 U.S.C. § 1986 against

Gronbeck, Meyer alleges the following.  Gronbeck knew of a conspiracy to deprive

Meyer of his rights when he received the proposed order from Ekola.  (FAC ¶ 189.)

Gronbeck forwarded the proposed order to Meyer.  (FAC ¶¶ 16, 189.C.)  Meyer knew of

Ekola's action and the proposed order "shortly after 16 October 2003."  (FAC ¶ 162A.i.1,

.4.)

An action under § 1986 must be brought "within one year after the cause of action

has accrued."  42 U.S.C. § 1986.  Meyer's claim was brought more than eleven years

after the cause of action accrued and is therefore untimely.

Furthermore, assuming that equitable tolling may be applied to a § 1986 claim,

Meyer has not pleaded sufficient facts to support application of the doctrine.  Meyer

concedes in the FAC that he was aware of the facts underlying the § 1986 claim against

Gronbeck by October 2003.  He alleges no facts that would support a finding of diligence

on his part, misconduct by Gronbeck that prevented him from timely filing the claim, or

any other extraordinary circumstance that would excuse an eleven-year delay.

In sum, the § 1986 claim against Gronbeck should be dismissed with prejudice as time-barred.

## III.    Yuma Union High School District's Motion to Dismiss

Meyer brings a conversion claim against Yuma Union High School District ("Yuma Union"), his former employer, and a 42 U.S.C. § 1983 claim against Yuma Union and its employee J. Doe 17.  (*See* FAC at 224, 253.)  Yuma Union moves to dismiss the claims for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

"To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991).  When a court relies on pleadings and affidavits instead of holding an evidentiary hearing, "the court must look at the facts in the light most favorable to the nonmoving party . . . and resolve all factual conflicts in favor of that party." *Id.*

There are two levels to an analysis of personal jurisdiction: (2) "whether the exercise of jurisdiction is proper under the forum state's long-arm statute"; and, if so, (2) "whether the exercise of personal jurisdiction comports with due process." *Id.* at 1387-88.  It is well established that "Minnesota's long-arm statute is coextensive with constitutional limits," and thus, the Court proceeds to the question of due process. *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006).

A court may exercise personal jurisdiction over a defendant who has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1949)).  The defendant's contacts with the forum must be sufficient to establish that the defendant "should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), and must arise from the defendants' purposeful availment "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The Eighth Circuit has identified five factors to measure a defendant's minimum contacts: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994) (citing *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983)).  The third factor distinguishes between general and specific jurisdiction.  *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010).  The last two factors are "of secondary importance and not determinative." *Land-O-Nod*, 708 F.2d at 1340.

Meyer has alleged the following relevant facts about Yuma Union's contacts with Minnesota.  Yuma Union is located in Arizona.  (FAC ¶¶ 237.B.iv.)  Meyer moved to Yuma, Arizona, from Bayfield, Wisconsin, to work as a teacher at Yuma Union.  (*Id.*)  Yuma Union and a Yuma Union employee identified as J. Doe garnished Meyer's paycheck every month to satisfy Meyer's court-ordered child-support obligations.  (FAC

¶¶ 64, 255.C.vi-vii, 541, 652.)  Although Yuma Union "was informed of the problems of the 2003 evidentiary hearing," it "did nothing."  (FAC ¶¶ 542-43.)

Meyer's allegations are insufficient to establish Yuma Union's or its employee's minimum contacts with Minnesota.  Any contacts with Minnesota were established through Meyer's actions, and a plaintiff's unilateral activity cannot create contacts between a nonresident defendant and a forum state.  *See Hanson*, 357 U.S. at 253.  Concerning the garnishment of Meyer's wages, this too occurred due to Meyer's conduct, not through any purposeful availment by Yuma Union.  Consequently, none of the three primary factors support a finding of personal jurisdiction over Yuma Union or J. Doe 17, and Meyer's claims against Yuma Union and J. Doe 17 should be dismissed without prejudice for lack of personal jurisdiction.

## IV.     Colleen Harris-Pearson's Motion to Dismiss

Meyer brings claims against his former attorney Colleen Harris-Pearson for breach of contract, willful blindness, and neglect to prevent under § 1986.  (FAC at 209, 210.)  Harris-Pearson moves to dismiss the claims under Rule 12(b)(6).

### A.     Breach of Contract

Meyer alleges that Harris-Pearson agreed to represent him on appeal of the 2003 Amended Judgment and Decree, before the time to appeal expired, and took his credit card number.  (FAC ¶¶ 159.C.v, 437-38.)  Two days later, Harris-Pearson provided legal advice and charged Meyer's credit card, but she did not file an appeal.  (FAC ¶¶ 439-40.)  Meyer asserts these alleged actions were a breach of contract, although he admits he was later able to reverse the charge on his credit card.  (FAC ¶¶ 440-41.)

The statute of limitations for a breach of contract claim is six years.  Minn. Stat. § 541.05, subd. 1(1); *St. Paul Fire & Marine Ins. Co. v. A.P.I., Inc.*, 738 N.W.2d 401, 408 (Minn. Ct. App. 2007).  The cause of action accrues when the contract is breached. *St. Paul Fire*, 738 N.W.2d at 408.  According to Meyer's allegations, the contract was breached in 2003.  Meyer did not file suit until 2015, more than eleven years after the claim accrued.  Meyer did not allege in the First Amended Complaint or argue in response to Harris-Pearson's motion that the statute of limitations for the breach-of-contract claim should be equitably tolled.  Even if he had, the allegations in the First Amended Complaint establish that Meyer knew the facts underlying the alleged breach in 2003, and no allegations provide a basis for equitable tolling.  Meyer's breach of contract claim against Harris-Pearson should be dismissed with prejudice as barred by the applicable statute of limitations.

### B.     Willful Blindness

In support of his claim for willful blindness, Meyer alleges that Harris-Pearson knew a crime was being committed but chose to prey on Meyer rather than report the crime.  (FAC ¶¶ 442-43.)

"The doctrine of willful blindness is well established in criminal law."  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).

> Many criminal statutes require proof that a defendant acted knowingly or willfully, and courts applying the doctrine of willful blindness hold that defendants cannot escape the reach of these statutes by deliberately shielding themselves from clear evidence of critical facts that are strongly suggested by the circumstances.  The traditional rationale for this doctrine is that defendants who behave in this manner are just as culpable as those who have actual knowledge.

*Id.*  In *Global-Tech*, the Supreme Court endorsed the application of the doctrine in civil lawsuits for induced patent infringement.  *Id.* at 768.  But the Supreme Court did not hold that the doctrine of willful blindness gives rise to an independent cause of action, nor has any other court so held.  Consequently, this claim should be dismissed with prejudice.

### C.      Neglect to Prevent

In support of his § 1986 neglect-to-prevent claim, Meyer alleges that Harris-Pearson knew in 2003 that a civil conspiracy existed and could have prevented it by filing an appeal.  (FAC ¶ 446.)  But he also alleges: "Maybe in practice Pearson did not have the power to prevent it."  (FAC ¶ 448.)

An action under § 1986 must be brought "within one year after the cause of action has accrued."  42 U.S.C. § 1986.  Meyer's claim against Harris-Pearson was brought more than eleven years after the cause of action accrued and is therefore untimely.

Meyer argues that his claim is timely, however, under the doctrine of equitable tolling.  The Court incorporates by reference the legal standards of equitable tolling and fraudulent concealment in Part II.A. *supra*.  As with Gronbeck, Meyer has not pleaded sufficient facts to support application of equitable tolling, based on fraudulent concealment or other extraordinary circumstances, to his § 1986 claim against Harris-Pearson.  According to Meyer's allegations, he knew in 2003 of the facts underlying his § 1986 claim against Harris-Pearson: that Harris-Pearson performed legal research, charged his credit card, and did not file an appeal.  The allegations further show that Meyer knew firsthand in 2003 of the facts underlying the alleged civil conspiracies, long

19

before the one-year period preceding the commencement of this case.  Accordingly,

Meyer is not entitled to equitable tolling, and his § 1986 claim against Harris-Pearson

should be dismissed with prejudice as untimely.  *See Thornberg*, 2016 WL 1319442, at

*1; *Firstcom*, 555 F.3d at 675.

## V.     Sara Burmeister and Michael Read's Motion to Dismiss

Meyer brings several claims against Sara Burmeister and Michael Read, who are

administrators at a high school in southeastern Wisconsin. Burmeister and Read move to

dismiss the claims for lack of personal jurisdiction and for failure to state a claim on

which relief may be granted.

### A.     § 1983 Claim

Meyer brings an official-capacity claim pursuant to 42 U.S.C. § 1983 against

Burmeister and Read for allegedly violating his violating his Fourteenth Amendment

rights.  (FAC ¶¶ 662-71.)  Meyer alleges that Read and Burmeister, "[w]hile acting in

their official capacities" as Principal and Superintendent, allowed Meyer's minor son to

be enrolled in Oak Creek High School without consent from a guardian or parent.  (FAC

¶¶ 662-63.)  Meyer contends the enrollment deprived him of a fundamental right

protected by the Fourteenth Amendment.  (FAC ¶¶ 664-67.)  Further, the deprivation

allegedly was caused by the school district's failure to train Read and Burmeister.  (FAC

at 670.)

It is clear from the language of the First Amended Complaint that Meyer is suing

Burmeister and Read only in their official capacities.  (*Id.* at 255.)  Unless a complaint

contains "a clear statement that officials are being sued in their personal capacities,"

the court interprets the complaint as bringing only official-capacity claims. *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997). Here, there is no clear statement that Burmeister and Read are being sued in their personal capacities, whereas the term "official capacity" is used repeatedly in the relevant allegations.

When public employees are sued in their official capacities, the lawsuit becomes "an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 n.55 (1978). The true defendant is the governmental entity, not the named official. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Consequently, Meyer's § 1983 claims against Burmeister and Read are claims against the school district. A school district is a "person" who may be sued under § 1983. *Peterson v. Indep. Sch. Dist. No. 811*, 999 F. Supp. 665, 670 (D. Minn. 1998).

However, governmental entities "are not vicariously liable under § 1983 for their employees' actions," but are "responsible only for 'their own illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quotation and emphasis omitted). Meyer alleges here that the school district failed to properly train Burmeister and Read. "[A] local government entity may not be sued under § 1983 on a respondeat superior theory of liability, but may be subject to § 1983 liability for inadequate training of its employees that directly causes constitutional injury." *B.A.B., Jr. v. Bd. of Educ. of St. Louis*, 698 F.3d 1037, 1039 (8th Cir. 2012) (citations omitted). A failure-to-train claim requires a plaintiff to show: (1) the government entity's training practices were inadequate; (2) the government entity was "deliberately indifferent to the rights of others in adopting" the training practices, meaning the failure to train was a conscious or deliberate choice;

and (3) the alleged inadequacies actually injured the plaintiff. *Id.* A failure-to-train claim

based on inadequate and conclusory allegations that do meet this standard is properly

dismissed pursuant to Rule 12(b)(6). *Id.* at 1040-41.

Meyer has not pleaded any facts indicating that the school district's training

practices were inadequate, that the school district was deliberately indifferent, or that the

deficient training practices actually caused injury to Meyer. His only allegation

regarding training is: "Violation of plaintiff's constitutional right was attributable to

FAILURE TO TRAIN by the School Board." (FAC ¶ 670.) This is insufficient to state a

§ 1983 claim against the school district. The deficiency "is not merely 'formal' or

'technical,'" and Meyer articulates no new allegations that would cure the defect. *See*

*Eller v. Nat'l Football League Players Ass'n*, 872 F. Supp. 2d 823, 837-38 (D. Minn.

2012) (citations omitted). Accordingly, the Court recommends that the claim be

dismissed with prejudice. *See id.*

### B.    Claims Brought Directly Against Burmeister and Read

Meyer also brings claims directly against Burmeister and Read for the deprivation

of custodial or parental rights pursuant to Minn. Stat. § 609.26; aiding and abetting

kidnapping pursuant to Minn. Stat. § 609.25; aiding and abetting kidnapping pursuant to

18 U.S.C. § 1201; and negligence. (FAC ¶¶ 474-86.)

The Court incorporates by reference the legal standards for personal jurisdiction

set forth in Part III *supra* and proceeds directly to the question whether exercising

personal jurisdiction over Burmeister and Read comports with due process. Meyer has

alleged no facts establishing that Burmeister or Read purposely availed themselves of the

privilege of conducting activities in Minnesota.  Burmeister and Read are school

administrators in Oak Creek, Wisconsin, and have no alleged contacts with Minnesota

other than contacts created through Meyer's activity or the activity of others.  For

example, Meyer alleges that Allan and Diane Lindsay took his son from Minnesota to

Wisconsin (FAC ¶ 469), that Burmeister and Read registered his son in school without

guardianship papers (FAC ¶ 474), and that Burmeister and Read ignored Meyer (FAC

¶ 477). Meyer also submits copies of emails sent to and from Burmeister and Read (Pl.'s

Decl. Exs. 2, 9 [Doc. Nos. 165-2, 165-9]), and an affidavit describing a visit Meyer made

to Oak Creek High School (Pl.'s Aff. ¶ 2 [Doc. No. 166]).  Finally, Meyer argues that

Burmeister and Read must have accepted student records from a Minnesota high school

when his son transferred to Oak Creek High School.  These allegations and exhibits are

insufficient to establish minimum contacts.  Meyer's claims against Burmeister and Read

should be dismissed without prejudice for lack of personal jurisdiction.

## VI.    U.S. Bank, N.A., J. Doe 12, and J. Doe 13's Motion to Dismiss

Meyer brings a claim of negligence against J. Doe, a U.S. Bank official.  (FAC at

259.)  He alleges the official was "sent evidence in 2007" of the "due process problem,"

but refused to "defend" the account.  (FAC ¶¶ 687-88.)  As a result, Meyer alleges he was

damaged and deprived of a protected property interest.  (FAC ¶ 693.) Meyer also brings a

claim of respondeat superior against U.S. Bank as the employer of J. Doe.  (FAC at 260,

¶ 694.)  Finally, Meyer brings a claim for conversion against U.S. Bank on the basis that

his U.S. Bank account was levied by Hennepin County to pay for child support

arrearages.  (FAC at 212 & ¶ 294.)  Specifically, he alleges that U.S. Bank "took

possession" of $400 in his bank account, despite notice to U.S. Bank "of the problems of the 2003 evidentiary hearing."  (FAC ¶¶ 460-61.)  Meyer alleges U.S. Bank had no right to the money and illegitimately exercised the State's police powers.  (FAC ¶ 463.) U.S. Bank, J. Doe 12, and J. Doe 13 (collectively, "U.S. Bank") move to dismiss the claims pursuant to Rule 12(b)(6) as time-barred.

A.      **Conversion**

Under Minnesota law, the statute of limitations for a conversion claim is six years. Minn. Stat. § 541.05, subd. 1(4); *Collins v. Envtl. Sys. Co.*, 3 F.3d 238, 243 (8th Cir. 1993).  "The limitations period begins to run when the conversion occurs unless it was concealed."  *Collins*, 3 F. 3d at 243 (citing *Williams v. Davis*, 234 N.W. 11, 13-14 (Minn. 1930)).

As discussed above, Meyer concedes he knew about the 2003 Amended Judgment and Decree shortly after it was issued, which would include the requirement for child support.  According to Meyer's allegations against U.S. Bank, Meyer knew in 2007 of the attempted levy for child support arrearages and notified U.S. Bank of the "due process problem" immediately.  Meyer also concedes in his opposition memorandum that "[i]n 2007 the Plaintiff was given notice regarding his account at US Bank being levied." (Pl.'s Mem. Opp'n U.S. Bank's Mot. Dismiss at 17 [Doc. No. 227].)  Meyer alleges no facts that would create a plausible inference that the levy was concealed.  The Court finds that Meyer was sufficiently aware of the alleged conversion in 2007 to have brought an action against U.S. Bank at that time.  Consequently, his conversion claim is time-barred and should be dismissed with prejudice.

24

Meyer does not allege in the FAC that U.S. Bank fraudulently concealed his conversion claim or the facts underlying that claim. To the contrary, the allegations in the FAC establish that he knew of the alleged conversion in 2007.

But Meyer does argue that he did not have sufficient legal training to know he had a potential cause of action for conversion, and thus the statute of limitations should be tolled. (Pl.'s Mem. Opp'n U.S. Bank's Mot. Dismiss at 24 [Doc. No. 227].) It is well established that "ignorance of a cause of action does not toll the running of the statutory limitations period." *MacRae v. Grp. Health Plan, Inc.*, 753 N.W.2d 711, 719 (Minn. 2008). Consequently, Meyer's argument fails.

Meyer also alleges that he was not aware until 2011 that he was required to pay an initial filing fee, and that his discovery of that fact restarted the limitations period for his claims. (FAC at 71, ¶¶ 14, 159.B.iv, 159.C.x, 160.B.iv; *see also* Pl.'s Mem. Opp'n U.S. Bank's Mot. Dismiss at 8-9, 17, 24 [Doc. No. 227].)

> When HMeyer first learned that he had to pay an initial filing fee in 2011, he tried to inquire into the records. However, the records were not available because they were being scanned for digital archiving. It was not until 2012 when HMeyer was actually able to inquire into the records to discover Haeg & Aldridge had not filed the motion in court service, but instead committed aggravated forgery by making false entries into court records (supra Count II).

(FAC at 71.) Meyer alleges he paid the initial filing fee on August 4, 2011. (FAC ¶ 179.K.) In response to U.S. Bank's motion, Meyer provided a copy of the Hennepin County Family Court case docket and a letter from his attorney's paralegal, Kathleen Hauser, to the Hennepin County Family Court. (Meyer Decl. Ex. 34 (Register of Actions, Case No. 27-FA-000269087) [Doc. No. 229-17]; Ex. 35 (Hauser Letter, July 29,

2011) [Doc. No. 229-18].)  The Court may consider these documents as matters of public record and as matters embraced by the FAC.  The documents show that the filing fee was required for a motion for modification of child support that Meyer filed on July 28, 2011, and was scheduled to be heard on August 19, 2011.  (Meyer Decl. Ex. 34 at 4 [Doc. No. 229-17]; Ex. 35 at 1 [Doc. No. 229-18].)  The filing fee was not assessed for the 2002 and 2003 proceedings, and thus had no bearing on 2003 Amended Judgment and Decree or on the funds levied in 2007.

Accordingly, Meyer is not entitled to equitable tolling based on fraudulent concealment or any other basis, and dismissal with prejudice of the conversion claim is warranted.  *See Thornberg*, 2016 WL 1319442, at *1; *Firstcom*, 555 F.3d at 675.

## B.    Negligence

The statute of limitations for a negligence claim is also six years.  Minn. Stat. § 541.05, subd. 1(5); *Klempka v. G.D. Searle & Co.*, 963 F.2d 168, 170 (8th Cir. 1992).  "The claim accrues and the statute of limitations begins to run when the plaintiff has suffered some damage as a result of the alleged negligence."  *Id.* (citing *Dalton v. Dow Chem. Co.*, 158 N.W.2d 580, 584 (Minn. 1968)).

Meyer alleges the funds were levied in 2007.  Thus, he suffered some damage during that year, and the statute of limitations on his negligence claim began running in 2007.  He alleges no facts that would support a later accrual date.  He does not allege that U.S. Bank fraudulently concealed his negligence claim or the facts underlying that claim.  To the contrary, the allegations in the FAC establish that he knew of his claim in 2007.  Nor do any allegations support a claim for equitable tolling.  The negligence claim is

therefore time-barred and should be dismissed with prejudice.

### C.      Respondeat Superior

The statute of limitations for respondeat superior claims is "governed by the statute of limitations that applies to the underlying tort action."  *See D.M.S. v. Barber*, 645 N.W.2d 383, 391 (Minn. 2002).  Thus, the statute of limitations for Meyer's respondeat superior claim is six years.  The statute of limitations began running on the conversion and negligence claims in 2007, and as with those claims, Meyer's respondeat superior claim is time-barred and should be dismissed with prejudice.

### D.      Statutory Immunity

Alternatively, Meyer's claims against U.S. Bank fail because U.S. Bank is granted immunity under Minn. Stat. § 552.04, subd. 10, for levying funds to satisfy a child support order.  Subdivision 10 provides:

> The third party is not liable to the judgment debtor, public authority, or other person for wrongful retention if the third party retains or remits disposable earnings, indebtedness, or money of the judgment debtor or any other person, pending the third party's disclosure or consistent with the disclosure the third party makes, if the third party has a good faith belief that the property retained or remitted is subject to the execution. . . .  No third party is liable for damages if the third party complies with the provisions of this chapter.

Minn. Stat. § 552.04, subd. 10.  "Third party" is defined as "the person or entity upon whom the execution levy is served."  Minn. Stat. § 552.01, subd. 4.  According to the allegations in the FAC, U.S. Bank levied the $400 funds pursuant to a levy from Hennepin County.  Meyer has not alleged facts that would support a finding that the levy itself was invalid, other than his challenge to the underlying 2003 Amended Judgment

and Decree.  He challenges the validity of that judgment on jurisdictional, procedural, and other grounds.  (*See* Pl.'s Mem. Opp'n U.S. Bank's Mot. Dismiss *passim* [Doc. No. 227].)  As set forth in Part X.A.1 *infra*, however, that challenge is barred by the *Rooker-Feldman* doctrine.  Thus, under Minn. Stat. § 552.04, subd. 10, U.S. Bank is not liable to Meyer for levying the funds.

## VII.    Wells Fargo Bank, N.A.'s Motion to Dismiss

Meyer brings claims of conversion and negligence against Wells Fargo Bank, N.A., also identified in the FAC as J. Doe 19 ("Wells Fargo").  (FAC at 9.)  Wells Fargo moves to dismiss the claims pursuant to Rule 12(b)(6).

### A.    Conversion

Meyer alleges that Wells Fargo attempted to take possession of $5.00 in his bank account and later attempted to charge the account $100.  (FAC ¶¶ 464-65.)  In doing so, Wells Fargo allegedly attempted to levy an account that contained political campaign contributions and illegitimately used state police powers.  (FAC ¶¶ 67, 466.)

Meyer does not allege when the attempted conversion occurred, and the Court thus cannot determine when the statute of limitations began to run.  Nevertheless, Meyer's conversion claim fails as a matter of law.  Conversion is "an act of willful interference with personal property, 'done without lawful justification by which any person entitled thereto is deprived of use and possession.'"  *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) (citing *Larson v. Archer-Daniels-Midland Co.*, 32 N.W.2d 649, 650 (1948)).  "A claim for conversion requires two elements: (1) that plaintiff has a property interest in some property; and (2) that defendant deprives the plaintiff owner of that

28

interest." *Cobb v. PayLease LLC*, 34 F. Supp. 3d 976, 988 (D. Minn. 2014) (citing

*Lassen v. First Bank Eden Prairie*, 514 N.W.2d 831, 838 (Minn. Ct. App. 1994)).  Here,

Meyer alleges that Wells Fargo only *attempted* to take $5.00, and later $100.00, from his

account, not that it actually did so and deprived Meyer of any property interest.  Thus,

Meyer has failed to state a claim for conversion against Wells Fargo.  The deficiency is

not a mere formality or technicality, and Meyer articulates no new allegations that would

cure the defect.  *See Eller*, 872 F. Supp. 2d at 837-38.  Accordingly, the Court

recommends that the claim be dismissed with prejudice.  *See id.*

### B. Negligence

Meyer alleges that Wells Fargo committed negligence in approving a home equity

line of credit.  (FAC ¶ 673.)  Meyer and an individual named Phyllis Floyd allegedly took

out the loan together in June or July 2002 so that Meyer could purchase a condominium

in Yuma, Arizona.  (FAC ¶¶ 237.C.xi, .xiv.)  Meyer promised Floyd he would make the

payments on the loan.  (FAC ¶ 237.C.xiii.)  When Meyer's wages were garnished in the

amount of $520 per month to fulfill his child support obligation, he was no longer able to

make the payments.  (FAC ¶ 244.B-.C.)  Floyd was then forced to procure a reverse

mortgage, but she lost her home anyway.  (FAC ¶¶ 244.D, 245.C.)  Meyer alleges the

loan was a predatory loan.  (FAC ¶¶ 237.C.xv.)  Meyer alleges that Wells Fargo owed

him a duty of care in the loan process, that underwriters breached that duty by shifting

too much risk on Meyer, that the risk analysis proximately caused the injury, and that

Meyer was damaged as a result.  (FAC ¶¶ 672-76.)

Meyer's negligence claim against Wells Fargo is barred by the applicable six-year

statute of limitations.  The alleged events occurred well over six years ago, and there are

no grounds for equitable tolling.  The FAC identifies no facts that were allegedly

concealed by Wells Fargo or that any concealment was intentional.  Meyer knew the

factual basis for the negligence claim when his wages were first garnished.  Accordingly,

Meyer is not entitled to equitable tolling based on fraudulent concealment or any other

basis, and dismissal of the negligence claim is warranted.  *See Thornberg*, 2016 WL

1319442, at *1; *Firstcom*, 555 F.3d at 675.

Alternatively, Meyer fails to state a claim for negligence.  To state a claim for

negligence under Minnesota law, Meyer must allege that (1) Wells Fargo owed him a

duty of care; (2) Wells Fargo breached that duty; (3) the breach proximately caused an

injury to Meyer; and (4) Meyer was actually injured.  *See Berger v. Nationstar Mortg.

LLC*, 118 F. Supp. 3d 1121, 1124-25 (D. Minn. 2015) (citations omitted).  "Existence of a

duty in a negligence case is a question of law."  *Funchess v. Cecil Newman Corp.*,

632 N.W.2d 666, 672 (Minn. 2001) (*quoted in Berger*, 118 F. Supp. 3d at 1125).  When a

contract, such as a mortgage and a home equity line of credit, "defines a relationship

between two parties, a plaintiff is not entitled to recover tort damages save for

exceptional cases in which a breach of contract constitutes or is accompanied by an

independent tort."  *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 994 (D. Minn.

2006) (quotation and internal quotation marks omitted) (*quoted in Berger*, 118 F. Supp.

3d at 1125).  A lender generally bears no fiduciary duty to a borrower.  *Ming'ate v. Bank

of Am., N.A.*, No. 11-cv-1787 (ADM/TNL), 2011 WL 4590431, at *5 (D. Minn. Sept. 30,

2011) (*quoted in Berger*, 118 F. Supp. 3d at 1125).

Wells Fargo was nothing more than a lender and owed no duty to Meyer independent of the contract when it approved the home equity loan.  There are no allegations that would support a finding that Wells Fargo owed a duty of care to Meyer.

Further, according to Meyer's allegations, it was the court order to pay child support in the amount of $520 a month that caused him not to make the payments on the loan, not any action or omission by Wells Fargo.  Meyer's negligence claim fails for this reason as well.

Meyer's negligence claim should be dismissed with prejudice.

## VIII.   HealthPartners, Inc.'s Motion to Dismiss

Meyer brings claims for commercial bribery and respondeat superior against HealthPartners, Inc.  (FAC at 249, 252).  HealthPartners argues that the claims are barred by the relevant statutes of limitation and fail as a matter of law under Rule 12(b)(6).

### A.       Commercial Bribery

Meyer alleges HealthPartners committed commercial bribery by receiving compensation from the State of Minnesota in exchange for providing psychological reports, evaluations, and parenting assessments from biased doctors and therapists.  (FAC ¶¶ 633, 640, 643, 644.)  Commercial bribery is not a recognized civil cause of action. *U.S. Fed. Credit Union v. Stars & Strikes, LLC*, No. A10-1101, 2011 WL 1466383, at *5 (Minn. Ct. App. April 19, 2011).  It is a criminal act prohibited by Minn. Stat. § 609.86. *Id.*  "[A] criminal statute does not automatically give rise to a civil cause of action unless the statute expressly or by clear implication so provides." *Larson v. Dunn*, 460 N.W.2d 39, 47 n.4 (Minn. 1990).  Section 609.86 does not so provide. *See* Minn. Stat. § 609.86;

*Stars & Strikes*, 2011 WL 1466383, at *5.

Meyer suggests in his opposition memorandum that the commercial bribery alleged against HealthPartners is a predicate act under RICO, 18 U.S.C. § 1962. (Pl.'s Mem. Opp'n HealthPartners' Mot. Dismiss at 7-8 [Doc. No. 237].)  Meyer did not bring a civil RICO claim against HealthPartners, however.  Even if he had, a RICO claim against HealthPartners would be time-barred.  "Civil RICO claims are governed by a four-year statute of limitations."  *Klehr v. A.O. Smith Corp.*, 87 F.3d 231, 238 (8th Cir. 1996).  Any RICO claim against HealthPartners based on the alleged commercial bribery stems from the Hennepin County custody proceedings in 2001 through 2003, more than eleven years before Meyer filed suit.  There are no allegations that would support a claim for fraudulent concealment or equitable tolling.  To the contrary, the allegations of the FAC establish that Meyer discovered his injury no later than October 2003.  (*See* FAC ¶¶ 5, 634, 637, 642, 643, 645, 646.)

For these reasons, Meyer's claim for commercial bribery against HealthPartners should be dismissed with prejudice.

## B.     Respondeat Superior

Meyer alleges HealthPartners is liable under a theory of respondeat superior for tortuous acts committed by employees Dr. John Prybl, Dr. Sonia Mosch, and Dr. Michael Fuhrman.  (FAC ¶¶ 646-51.)

Meyer asserts a claim for commercial bribery against Dr. Prybl, Dr. Mosch, and Dr. Fuhrman.  (*Id.* at 249.)  As discussed in the immediately preceding section, there is no civil action for commercial bribery.  Consequently, Meyer's respondeat superior claim

32

against HealthPartners based on the alleged commercial bribery by Dr. Prybl,

Dr. Fuhrman, and Dr. Mosch fails as a matter of law and should be dismissed with

prejudice.

Meyer also asserts a claim of defamation/libel against Dr. Mosch.  (*Id.* at 221.)

He alleges Dr. Mosch knowingly and intentionally made false representations in writing

about Meyer's mental health.  (FAC ¶¶ 506-09.)  This claim is barred by a two-year

statute of limitations provided in Minn. Stat. § 541.07.  *Songa v. Sunrise Senior Living*

*Inv., Inc.*, 22 F. Supp.3d 939, 942 (D. Minn. 2014).  Because the statute of limitations for

the respondeat superior claim is the same as the underlying tort, *see D.M.S.*, 645 N.W.2d

at 391, the respondeat superior claim is likewise time-barred and should be dismissed

with prejudice.  There are no alleged grounds for tolling the statute of limitations, and it

is clear from the allegations in the FAC that the claim is time-barred.  (*See* FAC ¶ 506,

642-43, 645-51.)  Meyer's respondeat superior claim against HealthPartners based on the

alleged defamation or libel by Dr. Mosch fails as a matter of law and should be dismissed

with prejudice.

## IX.    Federal Defendants' Motion to Dismiss

Defendants "J. Doe 10, J. Doe 10 in their official capacity (HHS – regional

office)," "J. Doe 20, J. Doe 20 in their official capacity (HHS – regional office),"

"J. Doe 40, J. Doe 40 in their official capacity (HHS – regional office)," "J. Doe 33,

J. Doe 33 in their official capacity (HHS auditors from regional office)," "J. Doe 11,

J. Doe 11 in their official capacity (State Department)," and "J. Doe 18, J. Doe 18 in their

officialcapacity (IRS)" (collectively, "Federal Defendants") move to dismiss all of

Meyer's claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6).

The entirety of the allegations against the Federal Defendants are as follows. Meyer is a United States citizen residing in Bangkok, Thailand.  (FAC ¶ 6.)  A state or county employee entered the 2003 Amended Judgment and Decree into a system shared with HHS.  (FAC ¶ 427.)  HHS placed Meyer in the "passport denial program."  (FAC ¶¶ 68, 426.)  HHS provided incentives to the State of Minnesota for participating in federal programs.  (FAC ¶ 63.)  HHS adopted an unconstitutional policy.  (FAC ¶ 368.) "There might be some regulations in the C.F.R. at are unconstitutional."  (FAC ¶ 368.A.) Actions by HHS employees, taken in their official capacity, were an abuse of process because the agreements under which the States obtain funding from HHS undermines the integrity of the judiciary, state agencies, and the medical profession.  (FAC at 258, ¶ 686.)

Meyer further alleges that the Department of State ("DOS") denied him a U.S. passport in 2010.  (FAC ¶¶ 69, 429.)  This deprived Meyer of his equal rights under the law pursuant to 42 U.S.C. § 1981.  (FAC at 208.)  Specifically, the denial interfered with his teaching contract in Thailand, and he lost his job.  (FAC ¶¶ 432-35.)  On May 19, 2011, Meyer retained attorney Kristin Huston to retrieve his passport from the U.S. Embassy in Bangkok.  (FAC ¶ 159.C.ix.)

Against the IRS, Meyer alleges the IRS wrongly "captured" his tax credits, refunds, and rebates.  (FAC ¶¶ 155.C.v, 540.)  This allegedly was an act of conversion. (FAC at 224.)

### A.      Official Capacity

It is clear from the allegations in the FAC that Meyer is suing J. Doe 10, J. Doe 20,

J. Doe 40, J. Doe 33, J. Doe 11, and J. Doe 18 only in their official capacities.  Unless a

complaint contains "a clear statement that officials are being sued in their personal

capacities," the court interprets the complaint as bringing only official-capacity claims.

*Murphy*, 127 F.3d at 754.  There is no clear statement in the FAC that J. Doe 10, J. Doe

20, J. Doe 40, J. Doe 33, J. Doe 11, and J. Doe 18 are being sued in their personal

capacities.  A claim against a federal official in his or her official capacity should be

treated as a claim against the federal government.  *See Hafer*, 502 U.S. at 25.

Consequently, Meyer's claims against the Federal Defendants are claims against the

federal agencies that employ them.

### B.      Conversion Claim Against the IRS

Meyer brings a claim for conversion against the IRS.  His sole allegation is that

the IRS wrongly captured tax credits, refunds, and rebates.  Meyer does not allege when

the IRS's alleged actions occurred, and the Court cannot discern from the FAC whether

the claim would be barred by a statute of limitations.

Nonetheless, this claim should be dismissed with prejudice on the basis of

sovereign immunity.  "The United States, as sovereign, is immune from suit save as it

consents to be sued, . . . and the terms of its consent to be sued in any court define that

court's jurisdiction to entertain the suit."  *United States v. Sherwood*, 312 U.S. 584, 586

(1941).  Sovereign immunity extends to agencies of the United States.  *Laswell v. Brown*,

683 F.2d 261, 268 (8th Cir. 1982).  The Federal Tort Claims Act (FTCA), 28 U.S.C.

§ 1346(b), "waives the immunity of the United States with respect to suits alleging injury or loss of property through the negligent or wrongful act or omission of a United States employee." *Murray v. United States*, 686 F.2d 1320, 1323 (8th Cir. 1982). This waiver, however, is limited by the exceptions listed in 28 U.S.C. § 2680. *Murray*, 686 F.2d at 1323.

Section 2680(c) "preserves sovereign immunity for '(a)ny claim arising in respect of the assessment or collection of any tax.'" *Murray*, 686 F.2d at 1323; *see Interfirst Bank Dallas, N.A. v. United States*, 769 F.2d 299, 306-08 (5th Cir. 1985) (determining that a common law conversion claim against the IRS was barred by § 2680(c), "which exempts from the provisions of the FTCA '[a]ny claim arising in respect of the assessment or collection of any tax'"), *aff'd*, 475 U.S. 1081 (1986); *Bank of N.H. v. United States*, 115 F. Supp. 2d 214, 221 (D.N.H. 2000). Relevant to Meyer's conversion claim, a taxpayer's interest in a refund falls within the scope of the phrase "assessment or collection" of a tax. *Aetna Cas. & Sur. Co. v. United States*, 71 F.3d 475, 477-78 (2d Cir. 1995) (construing § 2680(c) as barring "a claim for the IRS's tortious conversion of a tax refund"). Meyer's conversion claim arises "in respect of the assessment or collection of any tax," and the IRS is thus immune from suit.

Even if Meyer's conversion claim were cognizable under the FTCA, sovereign immunity would bar the claim because he did not exhaust his administrative remedies. *See Bohac v. Walsh*, 386 F.3d 859, 861 (8th Cir. 2004). Under the FTCA, a claimant must present his claim to the federal agency, and the agency must make a final decision, before the claimant may file suit. 28 U.S.C. § 2675(a). It is undisputed that Meyer failed

to file a claim with the IRS before bringing suit.  Consequently, his conversion claim may

be dismissed with prejudice as barred by sovereign immunity on this ground as well.  *See*

*Bohac*, 386 F.3d at 861.

### C.    Abuse of Process Claim Against HHS

Meyer brings an abuse of process claim against unnamed HHS employees in their

official capacities.  The HHS argues the claim does not satisfy the requirements of the

FTCA and fails to state a claim on which relief can be granted.

The tort of abuse of process is an exception to the FTCA's waiver of sovereign

immunity.  *See* 28 U.S.C. § 2680(h); *Weber v. United States*, No. 96-2667, 1997 WL

1591, at *1 (8th Cir. Jan. 2, 1997) (concluding an "abuse-of-process claim is barred by

the FTCA's discretionary function exception").  Thus, Meyer's abuse-of-process claim is

barred by sovereign immunity and should be dismissed with prejudice.

Alternatively, the claim fails as a matter of law.  In Minnesota, "the tort of abuse

of process has two elements: (1) the existence of an ulterior purpose; and (2) the act of

using the process to accomplish a result not within the scope of the proceedings in which

it was issued, whether or not the result might otherwise be lawfully obtained." *Questar*

*Data Sys., Inc. v. Serv. Mgmt. Grp., Inc.*, 502 F. Supp. 2d 960, 963 (D. Minn. 2007).

Here, Meyer has not alleged any facts that would support an inference that the HHS

employees had an ulterior purpose or that the process was used to accomplish a result

outside the scope of the proceedings.  Rather, he alleges generally that agreements

between HHS and states such as Minnesota undermines the integrity of the judiciary,

state agencies, and the medical profession.  This is insufficient to state an abuse-of-

process claim.

Because Meyer's abuse of process claim is barred by sovereign immunity and fails

to state a claim on which relief could be granted, it should be dismissed with prejudice.

### D.     Constitutional Claim Against HHS

Meyer raises a vague challenge to the constitutionality of HHS's authority to deny

passports and to provide incentives to the States for participating in federal programs

such as the Child Support Enforcement Program ("CSEP").

The Personal Responsibility and Work Opportunity Reconciliation Act

("PRWORA") "amended the [CSEP] (IV–D),[] which provides federal money to assist

states in collecting child support from absent parents." *Kansas v. United States*, 214 F.3d

1196, 1197 (10th Cir.), *cert. denied*, 531 U.S. 1036 (2000).  The states have the

responsibility to certify to the HHS individuals who owe more than $2,500 in child

support arrearages.  42 U.S.C. § 654(31).  Certain incentive payments to the states are

authorized by 42 U.S.C. § 658(a).  In addition to other enforcement tools, the HHS has

the authority to deny passports for nonpayment of child support.  42 U.S.C. § 652(k).

Meyer suggests in his opposition memorandum that these sections of the

PRWORA violate the Spending Clause and due process.  (Pl.'s Mem. Opp'n Fed. Defs.'

Mot. Dismiss at 29-31 [Doc. No. 248].)  But the provision of federal money to states

under PRWORA has been held constitutional under the Spending Clause.  *Kansas v.*

*United States*, 214 F.3d 1196, 1197-98, 1203-04 (10th Cir.), *cert. denied*, 531 U.S. 1036

(2000).  Similarly, the HHS's authority to deny or revoke passports pursuant to § 652(k)

has been found constitutional on both due process and equal protection grounds.

*Weinstein v. Albright*, 261 F.3d 127, 134-42 (2d Cir. 2001); *Risenhoover v. Washington Cty. Cmty. Servs.*, 545 F. Supp. 2d 885, 890-91 (D. Minn. 2008).  Accordingly, Meyer's constitutional challenge to the HHS's authority to deny passports and provide financial incentives to the states fails as a matter of law and should be dismissed with prejudice.

Meyer further suggests in his opposition memorandum that his constitutional claim should have been brought against the HHS employees in their individual capacities. To the extent Meyer's opposition could be construed as a motion for leave to amend the FAC to bring individual capacity claims against the Federal Defendants, the request should be denied as futile.  "Qualified immunity shields government officials performing discretionary functions from civil liability unless their conduct violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known."  *Luckert v. Dodge Cty.*, 684 F.3d 808, 817 (8th Cir. 2012).  Meyer has failed to plead a cognizable constitutional violation by any HHS employee, and thus, an individual capacity claim would be futile.

Finally, to the extent Meyer's claim could be construed as a challenge to the PRWORA as applied to his circumstances, § 652(k)(3) provides immunity "for any action with respect to a certification by a State agency" of an individual's child support arrearages.  42 U.S.C. § 652(k)(3).  Thus, HHS would be entitled to statutory immunity on this claim.

### E.    Section 1981 Claim Against DOS

Meyer brings a civil rights claim against the DOS pursuant to 42 U.S.C. § 1981. This statute provides in relevant part:

> All persons within the jurisdiction of the United States shall have the same
> right in every State and Territory to make and enforce contracts, to sue, be
> parties, give evidence, and to the full and equal benefit of all laws and
> proceedings for the security of persons and property as is enjoyed by white
> citizens, and shall be subject to like punishment, pains, penalties, taxes,
> licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

Meyer argues in his opposition memorandum that a DOS employee acted under color of state law, Minn. Stat. § 518.18, when the DOS employee denied him a passport in 2010. This is incorrect as a matter of law. Minnesota Statute § 518.18 pertains to the modification of a custody order and makes no mention of means to enforce the order, much less the authority to deny a passport. *See* Minn. Stat. § 518.18. Rather, 42 U.S.C. § 652(k) authorizes the denial of a passport for nonpayment of child support. Thus, the DOS acted under color of federal law, not state law. Section 1981 does not apply to actions taken by federal officials under federal law. *See Dotson v. Griesa*, 398 F.3d 156, 162 (2d Cir. 2005); *Geyer Signal, Inc. v. Minn. Dep't of Transp.*, No. Civ. 11-321 (JRT/LIB), 2014 WL 1309092, at *21 (D. Minn. Mar. 31, 2014); *Zynger v. Dep't of Homeland Sec.*, 615 F.Supp.2d 50, 55 (E.D.N.Y. 2009). Consequently, Meyer's § 1981 claim should be dismissed with prejudice.

Similarly, 42 U.S.C. § 1983 does not apply to actions taken by federal officials under federal law. Although Meyer did not assert a § 1983 claim against the DOS Defendant, he discusses § 1983 in his opposition memorandum as if he had. To the extent Meyer's opposition could be construed as a motion for leave to amend the FAC to bring a § 1983 claim against the DOS Defendant, the request should be denied as futile,

40

because § 1983 does not apply to federal actors.  Rather, *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), provides the remedy for constitutional claims against federal actors brought against them in their individual capacities.  *See Ferch v. Jett*, No. 14-cv-1961 (SRN/TNL), 2015 WL 251766, at *4 (D. Minn. Jan. 20, 2015) (citations omitted).  To the extent Meyer's opposition could be construed as a motion for leave to amend the FAC to bring a *Bivens* claim against the DOS official in his or her personal capacity, the request should be denied as futile on the basis of qualified immunity; Meyer has failed to plead a cognizable constitutional violation against a DOS official.

Returning to the claims Meyer actually has pleaded, the § 1981 claim against the DOS is also barred by sovereign immunity.  *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 827 n.8 (1976).  The § 1981 claim may be dismissed with prejudice on this basis as well.

Alternatively, Meyer fails to state a claim on which relief could be granted.  To establish a prima facie case under § 1981, the plaintiff must show: "(1) membership in a protected class; (2) the intent to discriminate on the basis of race on the part of the defendant; and (3) discrimination interfering with a protected activity (i.e., the making and enforcement of contracts."  *Daniels v. Dillard's, Inc.*, 373 F.3d 885, 887 (8th Cir. 2004).  Meyer alleges that the denial of the passport interfered with his teaching contract in Thailand and that he lost his job as a result.  These allegations are insufficient to state a § 1981 claim.  Although Meyer alleges elsewhere in his FAC that he is a member of a protected class, he alleges no facts that would support an inference that DOS or a DOS

41

employee discriminated against him on the basis of his protected status, or indeed for any reason at all.  Granted, a plaintiff need allege only a short and plain statement to plead a § 1981 claim, *see Amos v. GEICO Corp.*, No. Civ. 06-1281(PJS/RLE), 2006 WL 3437608, at *4 (D. Minn. Nov. 20, 2006), but there are no allegations of discrimination whatsoever against the DOS in the FAC.

### F.    Service of Process

The Federal Defendants ask to dismiss all claims against them because Meyer did not serve a copy of the original complaint on the U.S. Attorney General, as required by Federal Rule of Civil Procedure 4(i)(1)(B).  Under this Rule, to properly serve an agency of the United States, a party must "send a copy of [the summons and of the complaint] by registered or certified mail to the Attorney General of the United States at Washington, D.C."  Fed. R. Civ. P. 4(i)(1)(B).  Rule 4(m) requires the dismissal without prejudice of an action in which a defendant is not timely served, but allows an extension of time for service "if the plaintiff shows good cause for the failure."  Fed. R. Civ. P. 4(m).  Meyer has not shown good cause for his failure to properly serve the IRS, HHS, or DOS.  But, in light of the twenty-eight day objection period following the issuance of this Report and Recommendation, the Court recommends that Meyer be allowed to provide proof of service on the Attorney General during that timeframe.  If he does not do so, and if any of Meyer's claims against the Federal Defendants are not dismissed with prejudice pursuant to the above recommendations, the Court recommends that the claims be dismissed without prejudice pursuant to Rule 4(i)(1)(B).

**X.     State Defendants' Motion to Dismiss**

Referee Thomas Haeg, Judge Stephen C. Aldrich, Judge Marilyn Kaman, Referee Dean Maus, Judge Jamie L. Anderson, Referee Marybeth Dorn, Judge James T. Swenson, Judge Lucy A. Wieland, Judge Denise D. Reilly, Judge Kevin G. Ross, Judge Edward Toussaint, Jr., Judge Douglas L. Richards, Judge Charles A. Porter, Governor Mark Dayton, the Minnesota Fourth Judicial District Court (J. Does 1, 2, and 3), and the Minnesota Supreme Court (J. Does 22-28), (collectively, "State Defendants"), move to dismiss Meyer's claims against them under Rule 12(b)(1) for lack of subject matter jurisdiction, and under Rule 12(b)(6) for failure to state a claim against them on which relief can be granted.

Meyer's claims against the State Defendants comprise the bulk of the FAC.  Those claims are:

- Aggravated Forgery against Referee Haeg and Judge Aldrich, pursuant to Minn. Stat. § 609.625, subds. 1, 3, 5, for entering the 2003 Amended Judgment and Decree (Count II, FAC ¶¶ 90-105);

- Negligence per se against J. Doe 1, pursuant to Minn. Stat. §§ 357.021, 609.43, and 609.415, for scheduling an evidentiary hearing on a nonexistent change of custody motion (Count III, FAC ¶¶ 106-24);

- Obstruction of legal process against Referee Haeg and Judge Aldrich, pursuant to Minn. Stat. §§ 609.50, subd. 1(1), 609.02, for entering the 2003 Amended Judgment and Decree (Count IV, FAC ¶¶ 125-34);

- Misrepresentation against Judge Kaman and "J. Doe #?" for falsely representing in an order that Meyer had filed a motion for change of custody (Count V, FAC ¶¶ 135-46);

- Misrepresentation against Referee Haeg and Judge Aldrich for falsely representing

43

in the 2003 Amended Judgment and Decree procedural requirements were satisfied (Count VI, FAC ¶¶ 147-58);

- Fraudulent concealment against Referee Haeg and Judge Aldrich for concealing in the 2003 Amended Judgment and Decree the fact that Meyer did not file a motion for custody (Count VII, FAC ¶ 159);

- Fraudulent concealment against Referee Haeg and Judge Aldrich for concealing in the 2003 Amended Judgment and Decree procedural irregularities concerning the evidentiary hearing (Count VIII, FAC ¶ 160);

- Equitable tolling against Referee Haeg and Judge Aldrich because they "had not filed the motion in court service, but instead committed aggravated forgery by making false entries into court records" (Count IX, FAC at 70-71);

- Abuse of process against Referee Haeg, Judge Aldrich, and J. Doe 1, 2 or 3, for committing aggravated forgery, misrepresentation, and obstruction of justice and placing a hearing on the calendar without a properly-filed motion (Count XI, FAC at 77, ¶ 165);

- Conspiracy to interfere with civil rights against Referee Haeg and Judge Aldrich, pursuant to 42 U.S.C. § 1985, based on the nonexistent motion for change of custody and 2003 Amended Judgment and Decree (Count XIII, FAC ¶¶ 171-75);

- Misrepresentation against J. Doe 3 (Fourth Judicial District Court Administrator) for representing there was a motion for change of custody filed by Meyer (Count XVII, FAC ¶¶ 201-12);

- Deprivation of civil rights against Referee Haeg, Judge Aldrich, and J. Doe 1, 2, or 3, pursuant to 42 U.S.C. § 1983, for issuing and docketing the 2003 Amended Judgment and Decree  (Count XVIII, FAC ¶¶ 213-20);

- Deprivation of custodial or parental rights against Referee Haeg and Judge Aldrich, based on Minn. Stat. §§ 609.26, subd. 1(3); 609.02, subd. 9(3), for issuing the 2003 Amended Judgment and Decree (Count XIX, FAC ¶¶ 221-36);

- Deprivation of equal rights against Referee Haeg and Judge Aldrich, pursuant to 42 U.S.C. § 1981, for unspecified conduct relating to the home equity line of credit (Count XX, FAC ¶¶ 237-40);

- Intentional interference with performance of contract against Referee Haeg and

Judge Aldrich for issuing the 2003 Amended Judgment and Decree, which caused Meyer to be unable to make loan payments (Count XXI, FAC ¶¶ 241-49);

- Violation of equal protection under the Fourteenth Amendment against Referee Haeg, Judge Aldrich, and J. Doe 1, 2, or 3, for imputing Meyer was the moving party for the September 17, 2003, hearing (Count XXII, FAC ¶¶ 250-53);

- Deprivation of civil rights against Referee Haeg, Judge Aldrich, and J. Doe 1, 2, or 3, pursuant to § 1983, for placing the 2003 Amended Judgment and Decree on the "judgment roll" (Count XVIII, FAC ¶¶ 254-56);

- Deprivation of civil rights against Referee Haeg, Judge Aldrich, and J. Doe 1, 2, or 3, pursuant to § 1983, for conducting the September 17, 2003, evidentiary hearing without notice to Meyer (Count XXIII, FAC ¶¶ 257-64);

- Deprivation of civil rights against Referee Haeg, Judge Aldrich, and J. Doe 1, 2, or 3, pursuant to § 1983, for committing aggravated forgery (Count XVIII, FAC ¶¶ 265-69);

- Supervisor liability against Judge Aldrich for his supervision of Referee Haeg, and against the Fourth Judicial District Chief Judge and Head of Family Court for their supervision of Referee Haeg and Judge Aldrich, pursuant to § 1983, in connection with the 2003 Amended Judgment and Decree (Count XXIV, FAC ¶¶ 270-80);

- Failure to train against the Fourth Judicial District, pursuant to § 1983, based on procedural irregularities in the 2003 custody proceeding (Count XVI, FAC ¶¶ 326-45);

- Failure to train against the Minnesota Supreme Court, pursuant to § 1983, for failure to train the Fourth Judicial District court administrator (Count XVIII, FAC ¶¶ 346-47);

- *Monell* claim against the Fourth Judicial District (Count XXVI, FAC at 195-96);

- Deprivation of civil rights against the Fourth Judicial District, pursuant to § 1983, for adopting an unconstitutional policy of allowing motions to be filed with judges and not court services (Count XVI, FAC ¶¶ 348-53);

- Deprivation of civil rights against the Fourth Judicial District and the Minnesota Supreme Court, pursuant to § 1983, for adopting an unconstitutional policy of allowing motions to be filed with judges and not through court services (Count

45

XVIII, FAC ¶¶ 354-72);

- A RICO claim against Referee Haeg and Judge Aldrich, pursuant to 18 U.S.C. § 1961, for issuing the 2003 Amended Judgment and Decree (Count XXVIII, FAC ¶¶ 382-94);

- Kidnapping against Referee Haeg and Judge Aldrich, pursuant to Minn. Stat. § 609.25 and 18 U.S.C. § 1201, for issuing the 2003 Amended Judgment and Decree (Count XXVIII, FAC ¶¶ 395-407);

- Willful blindness against Judges Wieland, Reilly, Ross, Toussaint, Richards, and Porter for ignoring a letter Meyer sent them in 2007 (Count XXXVI, FAC ¶¶ 442-445);

- Deprivation of civil rights against Referee Dorn and Judge Swenson, pursuant to § 1983, for their conduct leading up to Judge Swenson's order (Count XXXXXV, FAC ¶¶ 491-501);

- False imprisonment against Referee Dorn and Judge Swenson for holding the July 12 and August 14, 2002, hearings, and ordering Meyer and J.M. to remain in Minnesota (Count XXXXXXVII, FAC ¶¶ 581-84);

- Kidnapping against Referee Dorn and Judge Swenson, pursuant to Minn. Stat. § 609.25 and 18 U.S.C. § 1201, for conducting the July 12 and August 14, 2002, hearings, and requiring J.M. to undergo custody evaluations (Count XXVIII, FAC ¶¶ 585-94);

- Deprivation of custodial or parental rights against Referee Dorn and Judge Swenson, based on Minn. Stat. §§ 609.26, subd. 1(3); 609.02, subd. 9(3), for conducting the July 12, 2002, hearing and altering the division of parenting time in an order (Count XXXXXXX, FAC ¶¶ 595-600);

- Negligence against Judge Kaman for appointing a guardian ad litem (Count XXXXXXXI, FAC ¶¶ 601-10);

- Deprivation of civil rights against Judge Kaman, pursuant to § 1983, for appointing a guardian ad litem and issuing orders subsequent to hearings held on July 12, 2002, and August 14, 2002 (Count XXXXXXXII, FAC ¶¶ 611-21);

- Commercial bribery against Referee Haeg for issuing the 2003 Amended Judgment and Decree (Count XXXXXXXIV, FAC ¶¶ 633-45); and

- Negligence against Governor Mark Dayton for accepting Title IV-D funding from the federal government (Count XXXXXXXIX, FAC ¶¶ 677-85).

## A.      Subject Matter Jurisdiction

Pursuant to Rule 12(b)(1), the State Defendants move to dismiss all claims against them as barred by the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983).  The State Defendants also seek dismissal of some claims under the Eleventh Amendment's grant of sovereign immunity.

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint for lack of subject matter jurisdiction.  A party contesting subject matter jurisdiction may mount either a facial challenge or a factual challenge to a court's jurisdiction.  *See Osborn v. United States*, 918 F.2d 724, 729-30 & n.6 (8th Cir. 1990).  On a facial attack, the court limits its consideration to the allegations of the complaint. *Id.* at 729 & n.6.  On a factual attack, the court may consider matters outside the pleadings without converting the motion to one for summary judgment.  *Id.*  "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."  *Id.* at 730.  In determining whether the plaintiff has sustained that burden, a court has the duty to construe liberally a pro se party's pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  However, "the Court may not supply additional facts or fashion a legal theory that assumes facts that have not been pleaded."

47

*Benjamin v. Experian Info. Sols., Inc.*, No. 14-cv-810 (JRT/JJG), 2014 WL 3509044, at

*2 (D. Minn. July 15, 2014) (citing *Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir.

2004)).

Here, the State Defendants mount a facial challenge to the Court's jurisdiction.

### 1.    *Rooker-Feldman*

Under the *Rooker-Feldman* doctrine, litigants may not bring suit in federal district

court "complaining of injuries caused by state-court judgments rendered before the

federal district court proceedings commenced and inviting district court review and

rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S.

280, 284 (2005). Generally, state appellate courts review state-court decisions, with any

subsequent federal review limited to the United States Supreme Court under 28 U.S.C.

§ 1257. Thus, "appellate jurisdiction to reverse or modify a state-court judgment is

lodged . . . exclusively in [the Supreme Court]." *Exxon Mobil Corp.*, 544 U.S. at 283. In

other words, with the exception of habeas corpus petitions, the federal district courts lack

subject matter jurisdiction to review state-court rulings. *Id.* at 292 n.8.

The doctrine applies not only to "the rare case styled as a direct appeal," *Simes v.

Huckabee*, 354 F.3d 823, 827 (8th Cir. 2004), but also attempts to litigate different claims

that are nevertheless "inextricably intertwined" with the state-court judgment, *Feldman*,

460 U.S. at 482 n.16.

> Under the *Feldman* doctrine, "the federal claim is inextricably intertwined
> with the state-court judgment if the federal claim succeeds only to the
> extent that the state court wrongfully decided the issues before it. Where
> federal relief can only be predicated upon a conviction that the state court
> was wrong, it is difficult to conceive the federal proceeding as, in

substance, anything other than a prohibited appeal of the state-court judgment."

*Keene Corp. v. Cass*, 908 F.2d 293, 296-97 (8th Cir. 1990) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).  In other words, "[t]he *Rooker-Feldman* doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions."  *Lemonds v. St. Louis Cty.*, 222 F.3d 488, 492 (8th Cir. 2000).

In its 2005 *Exxon* decision, the Supreme Court limited and clarified *Rooker-Feldman*, explaining that "*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine . . . ."  *Exxon Mobil Corp.*, 544 U.S. at 284.  The Court stated that there are some circumstances in which a federal court may exercise jurisdiction when a party attempts to litigate in federal court a matter previously litigated in state court.  *Id.* at 293.  For example, "[i]f a federal plaintiff 'presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'"  *Id.* (quoting *GASH Assocs. v. Rosemount*, 995 F.2d 726, 728 (7th Cir. 1993)).

Since *Exxon*, the Eighth Circuit has explained that a district court "is not deprived of jurisdiction over every case in which a plaintiff seeks a result different from the one it obtained in state court.  Rather, *Rooker-Feldman* is implicated in that subset of cases where the losing party in a state court action subsequently complains about that judgment

49

and seeks review and rejection of it."  *Skit Int'l, Ltd. v. DAC Techs. of Ark., Inc.*, 487 F.3d

1154, 1157 (8th Cir. 2007) (internal citations omitted).  Thus,

> [T]here are four requirements for the application of the *Rooker-Feldman*
> doctrine: (1) the federal court plaintiff must have lost in state court, (2) the
> plaintiff must complain of injuries caused by a state court judgment, (3) the
> plaintiff must invite district court review and rejection of that judgment,
> and (4) the state court judgment must have been rendered before the district
> court proceedings commenced.

*Christ's Household of Faith v. Ramsey Cty.*, 618 F. Supp. 2d 1040, 1044 (D. Minn. 2009)

(citing *Skit Int'l*, 487 F.3d at 1156-57).

A court must distinguish between independent claims forming the basis for a

complaint and claims seeking to address an injury caused by the state court decision

itself, because *Rooker-Feldman* bars only the latter.  *See Peet v. Associated Bank, N.A.*

*Mendota Heights*, No. 11-cv-2544 (SRN/JJG), 2012 WL 7589401, at *4 (D. Minn. July

20, 2012), *R. & R. adopted*, 2013 WL 717349 (D. Minn. Feb. 27, 2013), *aff'd*, 556 F.

App'x 546 (8th Cir. 2014); *Milliman v. Cty. of Stearns*, No. 05-cv-2993 (JRT/RLE), 2006

WL 2583170, at *12-13 (D. Minn. Sept. 7, 2006).  Moreover, while *Rooker-Feldman*

does not bar claims arising from sources outside the state court judgment, it bars "a claim

seeking redress for an injury caused by the state court decision itself-even if the basis of

the claim was not asserted to the state court."  *Milliman*, 2006 WL 2583170, at *13.  The

*Rooker-Feldman* doctrine is frequently applied to bar federal-court challenges to state-

court custody decisions.  *E.g.*, *Ballinger v. Culotta*, 322 F.3d 546, 549 (8th Cir. 2003);

*Christ's Household of Faith v. Ramsey Cty.*, 618 F. Supp. 2d 1040, 1044-47 (D. Minn.

2009).

In the case at hand, all claims but two against the State Defendants are barred by *Rooker-Feldman*.[5]  First, Meyer lost in the state court proceedings leading up to the July 16, 2002, order by Judge Swenson; the August 14, 2002, order by Judge Kaman; the May 29, 2003, order by Referee Haeg; the August 4, 2003, order by Referee Haeg; the August 20, 2003, order by Judge Aldrich; and the October 29, 2003, order issued by Referee Haeg and signed by Judge Aldrich.

Second, the injuries Meyer alleges against the State Court Defendants, except Governor Dayton and the judges to whom he sent a letter in 2007, were allegedly caused by those state court judgments.  Those alleged injuries include deprivations of parental rights, reduced parenting time, garnishment of wages to pay child support, child neglect, and myriad deprivations of civil and constitutional rights  (*See, e.g.*, FAC ¶¶ 121, 123.B.v-.vi, 144-46, 156-58, 172.F, 174, 205.C, 211.A, 212.B.i-.ii, 215.C.i-.ii, 230, 232-36, 241.C, 242.B, 244.B, 247.B, 248, 255.C.vi-.vii, 257-65, 345, 358-59, 394, 395-97, 494-95, 581, 587, 605, 609-10, 615, 621.)

Third, through all but two claims against the State Defendants, Meyer asks the Court to review and reject the state-court judgments enumerated above on numerous grounds, including forgery, misrepresentations made in the orders, obstruction of legal process and abuse of process for issuing the orders, numerous constitutional and civil rights violations, and procedural deficiencies such as whether hearings were

---

[5]  The two claims to which *Rooker-Feldman* does not apply are the willful blindness claim against Judges Wieland, Reilly, Ross, Toussaint, Richards, and Porter, based on a latter Meyer sent them in 2007; and the negligence claim against Governor Dayton for accepting Title IV-D funding from the federal government.

appropriately scheduled and orders appropriately docketed.  Meyer's claims are inextricably intertwined with the state-court judgments in that the claims succeed only if the state-court judgments are deemed erroneous or invalid.

Fourth, there is no dispute that the state court judgments were rendered before this case was filed.  Consequently, the Court recommends that all claims against the State Defendants, excepting the two claims noted herein, be dismissed for lack of subject matter jurisdiction under *Rooker-Feldman*.

## 2.   Eleventh Amendment Immunity

As an alternative ground for dismissal, the State Defendants seek dismissal on the basis of Eleventh Amendment immunity.  It is clear from the allegations in the FAC that Meyer has sued the State Defendants only in their official capacities.  Unless a complaint contains "a clear statement that officials are being sued in their personal capacities," the court interprets the complaint as bringing only official-capacity claims.  *Murphy*, 127 F.3d at 754.  There is no clear statement in the FAC that the State Defendants are being sued in their personal capacities.

The State Defendants are officials of the Minnesota Judicial Branch, *see* Minn. Const. art. VI, and the Governor of Minnesota.  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  "As such, it is no different from a suit against the State itself."  *Id.*  Official-capacity suits are subject to the Eleventh Amendment, under which states are immune from suits for damages brought against them in federal court, unless immunity has been waived or

overridden by Congress.  *Id.* at 66.  A state's immunity from suit under the Eleventh

Amendment divests a court of subject matter jurisdiction.  *See United States v. Metro. St.*

*Louis Sewer Dist.*, 578 F.3d 722, 724 (8th Cir. 2009).

Minnesota has not waived its Eleventh Amendment immunity from suit in federal

court for § 1983 claims for damages, *Murphy*, 127 F.3d at 754, and Congress has not

abrogated the states' immunity by enacting § 1983, *Quern v. Jordan*, 440 U.S. 332, 345

(1979).  Meyer seeks no prospective injunctive relief for his § 1983 claims against the

State Defendants, and thus, the Eleventh Amendment bars these claims.  *See Murphy*,

127 F.3d at 754.  The same is true for his § 1981 and § 1985 claims.  *Smith v. Fabian*,

No. Civ. 10-2193 (JRT/TNL), 2012 WL 1004982, at *3 (D. Minn. Mar. 26, 2012)

(§ 1981 claim); *Greene v. Gassman*, No. 11-618 (PJS/TNL), 2011 WL 7462043, at *3

(D. Minn. July 26, 2011) (§ 1985 claim), *R. & R. adopted*, 2012 WL 748374 (D. Minn.

Mar. 6, 2012), *aff'd*, 489 F. App'x 997 (8th Cir. 2012).  And even if Meyer had asked for

prospective injunctive relief on his § 1983 claims against the State Defendants, he has not

pleaded any cognizable constitutional violation.

Minnesota has not waived its Eleventh Amendment immunity for RICO claims.

*See Mashak v. Minnesota*, No. Civ. 11-473 (JRT/JSM), 2012 WL 928225, at *30

(D. Minn. Jan. 25, 2012), *R. & R. adopted*, 2012 WL 928251 (D. Minn. Mar. 19, 2012).

Nor has Minnesota waived its immunity for tort claims brought against it in federal court,

*see DeGidio v. Perpich*, 612 F. Supp. 1383, 1388–89 (D. Minn. 1985), or any of the other

state law claims Meyer asserts against the State Defendants.  Consequently, Meyer's

claims against the State Defendants are barred by the Eleventh Amendment.

### B.      Judicial Immunity

The State Court Defendants also argue that the doctrine of judicial immunity bars

all claims against Referee Haeg, Judge Aldrich, Judge Kaman, Referee Maus, Judge

Anderson, Referee Dorn, Judge Swenson, Judge Wieland, Judge Reilly, Judge Ross,

Judge Toussaint, Judge Richards, Judge Porter, and the Minnesota Supreme Court

Justices.

"Few doctrines were more solidly established at common law than the immunity

of judges from liability for damages for acts committed within their judicial jurisdiction."

*Pierson v. Ray*, 386 U.S. 547, 553-54 (1967) (citing *Bradley v. Fisher*, 13 Wall. 335

(1872)).  Judges are absolutely immune from civil lawsuits alleging misconduct during

the performance of their judicial functions, "even when the judge is accused of acting

maliciously and corruptly." *Id.* at 554.  Referees are also entitled to judicial immunity.

*Cassell v. Ramsey Cty.*, No. CV 15-2598 (PJS/JJK), 2015 WL 9590802, at *4 (D. Minn.

Dec. 11, 2015), *R. & R. adopted*, 2015 WL 9581806 (D. Minn. Dec. 30, 2015).  There are

two exceptions to the judicial immunity doctrine: (1) "a judge is not immune from

liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity";

and (2) "a judge is not immune for actions, though judicial in nature, taken in the

complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).

Neither exception applies here.  All of the judges' actions alleged by Meyer were

taken in their judicial capacity, and the alleged actions fell squarely within their

jurisdictional authority.  Allegations such as abuse of process, forgery, obstruction of

legal process, and kidnapping do not overcome judicial immunity.  Meyer's claims

against Referee Haeg, Judge Aldrich, Judge Kaman, Referee Maus, Judge Anderson, Referee Dorn, Judge Swenson, Judge Wieland, Judge Reilly, Judge Ross, Judge Toussaint, Judge Richards, Judge Porter, and the Minnesota Supreme Court Justices should be dismissed with prejudice accordingly.

### C.     Statutes of Limitations

Alternatively, all of Meyer's claims against the State Defendants are barred by the applicable statutes of limitations.  There is no claim with a statute of limitations longer than six years.  The statute of limitations for a § 1983 claim is governed by the statute of limitations for personal injury claims in the state in which the claim arose.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  Minnesota's longest limitations period for personal injury torts is six years.  *See* Minn. Stat. § 541.05, subd. 1.  A civil RICO action is subject to a four-year statute of limitations.  *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987).

Meyer's claims against the State Court Defendants accrued, and the limitations period began to run, long before he filed suit in May 2015.  Most of his claims are based on events that occurred in 2002 and 2003 and are time-barred.  The only significantly later claim is the willful blindness claim against Judges Wieland, Reilly, Ross, Toussaint, Richards, and Porter for ignoring a letter Meyer sent them in 2007.  Not only did the statute of limitations for this claim begin to run more than seven years before Meyer filed suit, but as discussed in Part IV.B above, the doctrine of willful blindness is not a cognizable cause of action.

Meyer has not pleaded sufficient facts to support a claim for equitable tolling.

To the contrary, the FAC's allegations establish that Meyer knew of the facts underlying his claims against the State Court Defendants in 2002 and 2003, except the willful blindness claim, which he knew of in 2007.  Meyer has not alleged any facts to support an inference that he diligently pursued his claims or that extraordinary circumstances prevented him from doing so.  *See Thompson*, 2011 WL 6003955, at *2.  The Court has previously discussed why Meyer's "discovery" of a filing fee due in 2011 did not toll the statute of limitations.  There was also no fraudulent concealment by any State Defendant.  No State Defendant made an intentionally false statement that concealed a potential cause of action, and any possible concealment could have been discovered through reasonable diligence.  Because it is clear from the FAC that equitable tolling does not apply, dismissal is appropriate.  *See Firstcom*, 555 F.3d at 675.

The Court recommends that all of Meyer's claims against the State Defendants be dismissed with prejudice as untimely.

### D.    Other Grounds for Dismissal

Because the Court has recommended dismissal of all of Meyer's claims against the State Defendants on several different grounds, the Court does not address the other bases for dismissal advanced by the State Defendants.

Based on the above and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. David Gronbeck's Motion to Dismiss [Doc. No. 74] be **GRANTED** and all claims against Gronbeck be **DISMISSED WITH PREJUDICE**;

2.  Yuma Union High School District's Motion to Dismiss [Doc. No. 84] be **GRANTED** and all claims against Yuma Union High School District and J. Doe 17 be **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction;

3.  Colleen A. Harris-Pearson's Motion to Dismiss [Doc. No. 116] be **GRANTED** and all claims against Harris-Pearson be **DISMISSED WITH PREJUDICE**;

4.  Sara Burmeister and Michael Read's Motion to Dismiss [Doc. No. 143] be **GRANTED** in that the official-capacity claims pursuant to 42 U.S.C. § 1983 against Burmeister and Read be **DISMISSED WITH PREJUDICE** and all other claims against Burmeister and Read be **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction;

5.  U.S. Bank, N.A., J. Doe 12, and J. Doe 13's Motion to Dismiss [Doc. No. 168] be **GRANTED** and all claims against U.S. Bank, N.A., J. Doe 12, and J. Doe 13 be **DISMISSED WITH PREJUDICE**;

6.  Wells Fargo Bank, N.A.'s Motion to Dismiss [Doc. No. 175] be **GRANTED** and all claims against J. Doe 19, also known as Wells Fargo Bank, be **DISMISSED WITH PREJUDICE**;

7.  HealthPartners, Inc.'s Motion to Dismiss [Doc. No. 180] be **GRANTED** and all claims against HealthPartners, Inc. be **DISMISSED WITH PREJUDICE**;

8.  Federal Defendants' Motion to Dismiss [Doc. No. 184] be **GRANTED** and

all claims against J. Doe 10, J. Doe 20, J. Doe 40, J. Doe 33, J. Doe 11, and

J. Doe 18 be **DISMISSED WITH PREJUDICE**; and

9. State Defendants' Motion to Dismiss [Doc. No. 193] be **GRANTED** and

all claims against Referee Thomas Haeg, Judge Stephen C. Aldrich, Judge

Marilyn Kaman, Referee Dean Maus, Judge Jamie L. Anderson, Referee

Marybeth Dorn, Judge James T. Swenson, Judge Lucy A. Wieland, Judge

Denise D. Reilly, Judge Kevin G. Ross, Judge Edward Toussaint, Jr., Judge

Douglas L. Richards, Judge Charles A. Porter, Governor Mark Dayton, J.

Doe 1, J. Doe 2, and J. Doe 3 be **DISMISSED WITH PREJUDICE**.


Dated: June 27, 2016                    *s/ Hildy Bowbeer*
                                        HILDY BOWBEER
                                        United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.