# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Harley Dean Meyer,<br><br>    Plaintiff,<br><br>v.<br><br>Thomas Haeg, Hennepin County Referee, in his official capacity; Stephen C. Aldrich, Hennepin County District Judge, in his official capacity; Virginia Ekola, Attorney, in her official capacity as an officer of Hennepin County District Court; David Gronbeck, Attorney, in his official capacity as an officer of Hennepin County District Court; Marilyn Kaman, Hennepin County District Judge, in her official capacity; Sara Burmeister, Oak Creek High School Superintendent, in her official capacity; Michael Read, Oak Creek High School Principal, in his official capacity; Dean Maus, Referee, in his official capacity; Jamie L. Anderson, State of Minnesota Judge, in his or her official capacity; Colleen A. Harris-Pearson; Allan Lindsay; Diane Lindsay; J. Does 1 and 2, in their official capacities (4th Judicial District); HealthPartners; Yuma Union High School District; James T. Swenson, Hennepin County 4th Judicial District Judge; Marybeth Dorn, Hennepin County Referee; Judge Lucy A. Wieland, in her official capacity; Judge Denise D. Reilly, in her official capacity; Judge Douglas L. Richards, in his official capacity; Judge Edward Toussaint, in his official capacity; | Case No. 15-cv-2564 (SRN/HB)<br><br><br><br>**AMENDED ORDER**[1] |

---

[1] This Amended Order amends the Court's previous Order, dated August 5, 2016 [Doc. No. 341], to add language regarding the entry of judgment. No other changes to the previous Order were made.

| | |
|---|---|
| Judge Charles A. Porter, in his official capacity; Judge Kevin G. Ross, in his official capacity; Marnette Hoisve, in her official capacity; Dr. Michael Fuhrman, of HealthPartners; Dr. Sonia Mosch, of HealthPartners; Janey Nelson, of Mound Psychological Services; Jean Peterson, in her official capacity; Dr. John Prybl, of HealthPartners; J. Doe 3, in his or her official capacity (4th Judicial District-Court Administrator?); J. Does 4-8, in their official capacities (Hennepin County); J. Doe 9 and 21, in their official capacities (State of Minnesota); J. Does 10, 20, and 40, in their official capacities (HHS-Regional Office); J. Doe 11, in his or her official capacity (State Department); J. Does 12 and 13 (US Bank); J. Does 14, 15, and 16, in their official capacities (Arizona Department of Economic Security Division of Support Enforcement); J. Doe 17, in his or her official capacity (Yuma Union School District); J. Doe 18, in his or her official capacity (IRS); J. Doe 19 (Wells Fargo Bank); J. Doe 22-28 (State of Minnesota - Minnesota Supreme Court); J. Doe 31, in his or her official capacity (State auditor); J. Doe 32, in his or her official capacity (Minn. DHS auditor); J. Doe 33, in his or her official capacity (HHS auditors from regional office); J. Doe 34, in his or her official capacity (State of Minnesota - executive policy maker); J. Doe 35 (NonGovernment Agency); J. Doe 36 (Unknown Company); J. Doe 38, in his or her official capacity (State of Minnesota); J. Doe 39, in his or her official capacity (NonGovernment Agency); J. Doe 47, in his or her official capacity (State of Minnesota?/Hennepin County?); J. Does 53-82; and J. Does 83-91, in their official capacities, | |

|  Defendants. |  |
|---|---|

Harley Dean Meyer, *pro se*, Naewna Newspaper, % Ladapa Tiwasingha, 96 Moo 3 Vibavadee Randsit Road, Laksi, Bangkok, Thailand 10210, Plaintiff

Steven M. Phillips and Steven C. Kerbaugh, Anthony Ostlund Baer & Louwagie P.A., 3600 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402; and Ann-Marie Anderson, Wright Welker & Pauole, PLC, 10429 South 51st Street, Suite 285, Phoenix, AZ 85044, for Yuma Union High School District

Bryon G. Ascheman, Burke & Thomas, PLLP, 3900 Northwoods Drive, Suite 200, Arden Hills, MN 55112, for Colleen A. Harris-Pearson

Stacy A. Broman, Meagher & Geer, PLLP, 33 South Sixth Street, Suite 4400, Minneapolis, MN 55402; and Ronald S. Stadler, Mallery & Zimmerman, S.C., 731 North Jackson Street, Suite 900, Milwaukee WI, 53202; for Sara Burmeister and Michael Read

Jonathan P. Norrie and Amie E. Penny Sayler, Bassford Remele, 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402, for U.S. Bank, N.A.

Ellen B. Silverman and Ashley M. DeMinck, Hinshaw & Culbertson LLP, 333 South Seventh Street, Suite 2000, Minneapolis, MN 55402, for Wells Fargo Bank, N.A.

David M. Wilk and Angela Beranek Brandt, Larson King, LLP, 2800 Wells Fargo Place, 30 East Seventh Street, St. Paul, MN 55101, for HealthPartners, Inc.

Erin M. Secord, Assistant United States Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for J. Does 10, 11, 18, 20, 33, and 40

Andrew Tweeten, Assistant Attorney General, 445 Minnesota Street, Suite 1100 St. Paul, MN 55101, for Referee Thomas Haeg, Judge Stephen C. Aldrich, Judge Marilyn Kaman, Referee Dean Maus, Judge Jamie L. Anderson, Referee Marybeth Dorn, Judge James T. Swenson, Judge Lucy A. Wieland, Judge Denise D. Reilly, Judge Kevin G. Ross, Judge Edward Toussaint, Jr., Judge Douglas L. Richards, Judge Charles A. Porter, Governor Mark Dayton, Minnesota Fourth Judicial District Court, and Minnesota Supreme Court

David Gronbeck, Esq., *pro se*, 5821 Blaisdell Ave. South, Minneapolis, MN 55419, Defendant

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Plaintiff's Objection to the Magistrate's Report and Recommendation ("Pl.'s R & R Objs.") [Doc No. 309] and Plaintiff's Objection to the Magistrate's Order on Plaintiff's Motion to Amend ("Pl.'s Order Objs.") [Doc. No. 318] (collectively, "Meyer's Objections"). Plaintiff Harley Dean Meyer ("Meyer") objects to the Report and Recommendation of Magistrate Judge Bowbeer dated June 27, 2016 ("R & R") [Doc. No. 292] and Magistrate Judge Bowbeer's Order on Plaintiff's Motion to Amend Complaint dated July 8, 2016 ("July 8 Order") [Doc. No. 295]. Numerous Defendants filed timely responses to Meyer's Objections. (See Doc Nos. 311, 319, 321–25, 327, 340.) For the reasons set forth below, Meyer's Objections are overruled, the R & R is adopted, and the July 8 Order is affirmed.

**I.   BACKGROUND**

More than a year ago, Meyer filed his original Complaint, which was 221 pages long, named twelve Defendants and ninety-one J. Doe Defendants, and—by its own count—contained sixty-six state and federal law claims. (See Compl. [Doc. No. 1].) As Meyer described it, "[t]his action of complex litigation arises out of a series of transactions and occurrences involving procedural irregularities originating from a 2003 evidentiary hearing held in the Hennepin County 4th District's Family Court." (Id. at 4.[2])

After numerous Defendants moved to dismiss his claims, Meyer requested and received an extension of time in which to file an amended complaint. (See Order dated November 9, 2015 ("August 9 Order") at 3 [Doc. No. 123].) However, Magistrate Judge Thorson ("Judge Thorson") specifically directed that Meyer's amended complaint

---

[2] The Court cites to the page numbers as assigned by ECF.

comply with Federal Rule of Civil Procedure 8. (Id. at 4.) Rule 8 requires that a complaint contain a "short and plain statement" of a plaintiff's claims and the basis for the court's jurisdiction. Fed. R. Civ. P. 8(a)(1)–(2).

Despite Judge Thorson's directive and the requirements of Rule 8, Meyer filed an amended complaint that is 267 pages long, names twenty-seven Defendants and seventy-seven J. Doe Defendants, and—by its own count—contains eighty-two state and federal law claims. (See First Amended Compl. ("FAC") [Doc. No. 136].) Again, numerous Defendants moved to dismiss Meyer's claims (collectively, the "moving Defendants"). Meyer then sought leave to file another amended complaint, but did so without complying with the local rules governing such a motion. (See Pl.'s Mot. for Second Amended Compl. [Doc. No. 267]; Order dated March 8, 2016 ("March 8 Order") [Doc. No. 275].) Despite this failure, Magistrate Judge Bowbeer[3] ("Judge Bowbeer") agreed to consider Meyer's motion to amend. (See March 8 Order.) The proposed complaint accompanying Meyer's motion is 321 pages long, looks to add still more defendants, and—by its own count—contains ninety-one state and federal law claims. (See Proposed Second Amended Compl. ("SAC") [Doc. No. 271].)

The R & R recommended granting the moving Defendants' motions to dismiss. (See R & R at 56–58.) Judge Bowbeer concluded that Meyer's claims against the moving Defendants suffered from one or more of the following deficiencies: (1) they were time barred by the applicable statute of limitations; (2) personal or subject matter jurisdiction was lacking; (3) Meyer failed to state a claim on which relief could be

---

[3] Judge Thorson recused herself on December 7, 2015 (See Doc. No. 142.)

granted; (4) the claim was barred by some form of immunity (e.g., the Eleventh Amendment, judicial immunity, qualified immunity, statutory immunity); (5) Meyer failed to properly serve the Defendant(s).  (See id. at 9–56.)

Judge Bowbeer then denied Meyer's motion to file the SAC.  (See July 8 Order at 20.)  Specifically, Judge Bowbeer found that an amendment was unwarranted because: (1) Meyer's proposed amendments did not remedy the deficiencies in the FAC; (2) the proposed amendments were futile; and (3) further amendment would cause undue delay, unduly burden the Court and the Defendants, and "overarching principles of justice" weighed against granting Meyer's motion.  (See id. at 5–20.)

Meyer filed lengthy, but difficult to decipher, objections to both the R & R and the July 8 Order.  (See Pl.'s R & R Objs.; Pl.'s Order Objs.)  Meyer's Objections are closely related and present nearly identical arguments.  As best the Court can discern, Meyer advances four primary objections regarding the R & R and July 8 Order: (1) that they failed to reach the merits of his claims about the legality of a 2003 state court child custody decision; (2) that they improperly concluded that many of Meyer's claims are time barred; (3) that they relied on "significant referencing errors" in the FAC; and (4) that Meyer was not given enough time to file the FAC and his motion to file the SAC was improperly denied.  (See Pl.'s R & R Objs.; Pl.'s Order Objs.)

This Court has carefully considered all of Meyer's Objections and conducted a *de novo* review of the record.  Based on this review, the Court finds that the thorough and

well-reasoned R & R and July 8 Order accurately recount the facts and correctly apply the law.[4]

### A. Facts and Meyer's Claims

Nearly all of Meyer's claims relate to a child custody dispute that occurred in 2003. (R & R at 5.) In 2001, Meyer divorced his wife, V.M. (Id.) They were awarded joint legal and physical custody of their son, J.M. (Id.) However, shortly thereafter Meyer and V.M. began to dispute the custody terms, leading to litigation in Hennepin County Family Court. (See id. at 5–6.) Numerous hearings related to the custody of J.M. were held between 2002 and 2003. (See id. at 5–9.) Meyer was represented by an attorney during these proceedings and he and/or his attorney was present at each hearing. (See id.) Ultimately, V.M. was awarded sole legal and physical custody of J.M. and Meyer was ordered to pay child support (the "2003 custody decision"). (Id. at 9.) Meyer claims he briefly retained another attorney to pursue an appeal of the 2003 custody decision, but that representation was terminated without Meyer taking an appeal.[5] (See id. at 17–18.) Meyer alleges J.M. was later enrolled in school in southeastern Wisconsin without the permission of a parent or guardian. (See id. at 20.)

After the 2003 custody decision, Meyer's employers at times garnished his wages to satisfy his child support obligations. (See id. at 16–17.) Banks where Meyer held

---

[4] The R & R is remarkably detailed and carefully addresses all of Meyer's claims against the moving Defendants. Because, after a *de novo* review of the voluminous record, the Court finds the R & R to be accurate, the Court cites to the R & R for the factual background necessary to address Meyer's Objections.

[5] It is unclear whether Meyer ever appealed the 2003 custody decision, but his pleadings suggest that he did not. (See FAC at 64–65 (citing to the ECF page numbers).)

accounts also levied those accounts for this same purpose. (See id. at 23–24, 28.) According to Meyer, these levies caused him to default on a home equity line of credit he took out to purchase a condominium in Arizona. (See id. at 29.) Meyer also contends that he was placed in a "passport denial program" and actually denied a U.S. passport in 2010 because of his failure to abide by the terms of the 2003 custody decision (specifically, his child support obligations). (See id. at 34.) Finally, Meyer alleges that the Internal Revenue Service ("IRS") wrongly "captured" his tax credits, refunds, and rebates. (See id.)

Meyer now contends that all aspects of the 2003 custody decision, and the hearings preceding it, were fraudulent, procedurally deficient, involved negligence, and amounted to a civil conspiracy against him. (See id. at 43–47.) As a result, Meyer brought state and federal law claims against hundreds of individuals and entities (e.g., his former attorneys, judges and referees in Minnesota's state court system, the federal agencies involved with his passport denial and tax issues, his former employers, financial institutions, administrators at the high school J.M. attended) who he alleges were responsible for the 2003 custody decision, or relied on that decision to take actions that adversely impacted him. (See generally FAC.) In general, the vast majority of Meyer's claims allege that the Defendants' acts relating to or relying on the 2003 custody decision were violations of Meyer's civil rights, Minnesota state law, and various federal laws and regulations. (See id.)

II.   DISCUSSION

    A. Legal Standards

8

District courts conduct a *de novo* review of a magistrate judge's recommendations on dispositive motions and a magistrate judge's denial of a motion to amend based on futility where specific objections are made to those recommendations or rulings. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); D. Minn. L.R. 72.2(b); Magee v. Trustees of the Hamline Univ., Minn., 957 F. Supp. 2d 1047, 1062 (D. Minn. 2013) (the district court conducts a *de novo* review of a magistrate judge's denial of a motion to amend when that denial is based on futility).

When evaluating a motion to dismiss, the Court assumes the facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, Hanten v. School District of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions the plaintiff draws from the facts pled, Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). "Although it is to be liberally construed, a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985).

### B. Meyer's Objections Regarding the 2003 Custody Decision

Meyer contends that the magistrate judge erred by misstating the "major premise" of his claims. (Pl.'s R & R Objs. at 1–2.). Meyer argues that his claims arise out of "civil rights violations" and not the 2003 custody decision. (See id. at 1.) However, Meyer goes on to assert that the magistrate judge erred by failing to assess whether the Hennepin County Family Court had jurisdiction over, or properly decided, the 2003 custody decision. (Id. at 3–4, 12–13, 16–17, 19; Pl.'s Order Objs. at 1–3, 10–12.) Specifically, Meyer contends that the Hennepin County Family Court lacked jurisdiction because: (1) it assumed Meyer moved to challenge the original custody order when he did not, (2) Meyer was not given proper notice of some of the proceedings, and (3) the 2003 custody decision was "contrary to law" because it was issued within one year of Meyer's divorce and the original custody order. (See Pl.'s R & R Objs. at 5, 7–9, 13, 17; Pl.'s Order Objs. at 10–12.) Despite his extensive arguments about the legality of the 2003 custody decision, Meyer alleges that issue is not intertwined with whether his constitutional rights were subsequently violated. (See Pl.'s R & R Objs. at 19.)

Under the Rooker-Feldman doctrine, a litigant who loses in state-court may not bring a claim in federal district court "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Federal appellate review of state-court judgments is limited, except under certain circumstances not applicable to the present matter (e.g., habeas challenges to a state-court conviction), to the United States Supreme

10

Court. 28 U.S.C. § 1257; Exxon Mobil, 544 U.S. at 283 ("[A]ppellate jurisdiction to reverse or modify a state-court judgment is lodged, . . . by 28 U.S.C. § 1257, exclusively in [the Supreme Court]."). The Rooker-Feldman doctrine even denies federal district courts subject matter jurisdiction over claims that are "inextricably intertwined" with a state court judgment. D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 n.16 (1983).

> [T]he federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

Keene Corp. v. Cass, 908 F.2d 293, 296–97 (8th Cir. 1990) (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring)). The Rooker-Feldman doctrine often precludes federal district court jurisdiction where a litigant brings claims under 42 U.S.C. § 1983 alleging civil rights violations related to a state court judgment. See id. at 297. Similarly, federal courts often lack jurisdiction to consider claims related to state court child custody decisions. See, e.g., Ballinger v. Culotta, 322 F.3d 546, 549 (8th Cir. 2003); Christ's Household of Faith v. Ramsey Cty., 618 F. Supp. 2d 1040, 1043–47 (D. Minn. 2009); Cassell v. Cty. of Ramsey, No. 10-cv-4981 (JRT/TNL), 2011 WL 7561261, at *10–16 (D. Minn. Nov. 2, 2011), report and recommendation adopted, No. 10-cv-4981 (JRT/TNL), 2012 WL 928242 (D. Minn. Mar. 19, 2012), aff'd, 490 F. App'x 842 (8th Cir. 2012).

The Cassell case is instructive. There, the *pro se* plaintiff ("Cassell") brought a wide-array of federal and state law claims against numerous defendants based on an

11

alleged conspiracy to infringe on Cassell's civil rights pursuant to a state court child custody decision.  See Cassell, 2011 WL 7561261 at *1–2.  In relevant part, Cassell argued that the Rooker-Feldman doctrine did not apply because "there was fraud on the state district court regarding the basis of the state district court's jurisdiction over the child-support and -custody proceeding . . . ." Id. at *11.  The court rejected Cassell's argument, noting that the Eighth Circuit had not adopted a fraud-on-the-court exception to the Rooker-Feldman doctrine, found Cassell's complaint to be "fundamentally about [his] dissatisfaction with his state court proceedings," and held that the court lacked subject matter jurisdiction over Cassell's claims.  Id. at *10–11.

Here, Meyer's state and federal law claims are fundamentally about his dissatisfaction with the 2003 custody decision.  Meyer himself repeatedly acknowledges that the legality of the 2003 custody decision is central to his claims against many of the Defendants: "At the heart and core of the [FAC] are the issues of whether the Court proceedings in 2002/2003 had jurisdiction and what jurisdictional defects existed. Addressing those issues determines 90% of this cause of action."  (Pl.'s R & R Objs. at 2; see FAC at 2; Pl.'s Order Objs. at 1–2.)  In fact, Meyer's objection is that the R & R erred by not considering and rejecting the 2003 custody decision.  By Meyer's own account then, the vast majority of his claims are inextricably intertwined with the 2003 custody decision.  Thus, the Court lacks subject matter jurisdiction to consider those claims

12

pursuant to the Rooker-Feldman doctrine.[6] The R & R did not err in reaching the same conclusion.

### C. Meyer's Objections Regarding the Statutes of Limitations and Equitable Tolling

Meyer asserts that the R & R and July 8 Order erred by concluding that many of his claims are time barred. (See Pl.'s R & R Objs. at 9–12; Pl.'s Order Objs. at 3–9.) He offers three interrelated arguments. First, Meyer argues that his fraud claims are not time barred because he could not have discovered them earlier than he did.[7] (See Pl.'s R & R Objs. at 9, 11–12.) Second, Meyer contends that he could not have discovered many of his claims earlier than he did because they were fraudulently concealed from him by people, such as his former attorneys, who owed him fiduciary duties. (See id. at 10, 13–14; Pl.'s Order Objs. at 4–7, 9.) Third, Meyer argues that the applicable statutes of limitations were tolled because he did not learn of certain facts until 2011—such as the requirement that moving parties pay a filing fee[8]—and because he was unable to review

---

[6] Even if the Rooker-Feldman doctrine did not apply—it does—dismissal of Meyer's claims would be required on other bases (e.g., the application of one or more immunities, pleading deficiencies, lack of personal or subject matter jurisdiction).

[7] Precisely when Meyer believes he reasonably could have, or did, discover his fraud claims is unclear.

[8] Meyer repeatedly references the fact that, according to him, he did not pay a filing fee to bring a motion challenging custody of J.M. until August of 2011. (See Pl.'s R & R Objs. at 7, 11–15; Pl.'s Order Objs. at 7, 10.) It is unclear which argument Meyer believes this fact supports. To the extent he argues that it shows the 2003 custody decision was erroneous, the Court does not reach the merits of that argument because the Rooker-Feldman doctrine deprives the Court of jurisdiction, as described above. To the extent Meyer contends that late discovery tolled the statutes of limitations until then, that argument is addressed below.

13

certain state court records related to the 2003 custody decision for several months while they were being digitized. (See Pl.'s R & R Objs. at 9–10, 13–14; Pl.'s Order at 7–9.)

In what is often called the "discovery rule," Minnesota state law claims for misrepresentation and fraud must be brought within six years of "the discovery by the aggrieved party of the facts constituting the fraud." Minn. Stat. § 541.05, subd. 1(6). "The facts constituting the fraud are deemed to have been discovered when they were actually discovered or, by reasonable diligence, should have been discovered." Doe v. Archdiocese of St. Paul, 817 N.W.2d 150, 172 (Minn. 2012) (quotations omitted). However, for other types of claims, ignorance of a cause of action is not a basis for tolling the statute of limitations, absent fraudulent concealment. Williamson v. Prasciunas, 661 N.W.2d 645, 650 (Minn. Ct. App. 2003). Fraudulent concealment is present only where: (1) the opposing party made a statement that concealed a cause of action, (2) the statement was intentionally false, and (3) the plaintiff could not have discovered the concealed claim through reasonable diligence. Id.

Similarly, "[t]he doctrine of equitable tolling permits a plaintiff to sue after the statutory time period has expired if he has been prevented from doing so due to inequitable circumstances." Firstcom, Inc. v. Qwest Corp., 555 F.3d 669, 675 (8th Cir. 2009) (quoting Pecoraro v. Diocese of Rapid City, 435 F.3d 870, 875 (8th Cir. 2006)). A plaintiff must show that he diligently pursued his claim, but that extraordinary circumstances stood in his way, to invoke equitable tolling. Id.

Here, Meyer presents no facts as to why the discovery rule or equitable tolling saves his claims. The R & R carefully considered Meyer's arguments about the

discovery rule, fraudulent concealment, and equitable tolling, but rejected them, noting that Meyer admitted he knew about the facts underlying his various claims for years, but failed to act until long after the relevant statute of limitations expired. (<u>See, e.g.</u>, R & R at 12–13, 18–20, 24, 26–27, 29–30, 31–33, 55.) This Court agrees with the R & R's conclusions.

Meyer's assertions about his "discovery" of the filing fee requirement and the period during which state court records were unavailable to him do not change this result. For instance, even assuming that equitable tolling applied from August 2011 until April 2012, when Meyer alleges he was unable to access the state court records, this nine month period does not save any of Meyer's claims. This period occurred nearly eight years after the 2003 custody decision (well outside the statute of limitations for most of Meyer's claims) and Meyer still did not bring his claims for another three years thereafter. This same timing issue exists for Meyer's "discovery" of the filing fee in August of 2011. Meyer fails to present any facts—beyond his conclusory statements—that fraudulent concealment, the discovery rule, or equitable tolling applies. Instead, the record shows that Meyer, despite knowing of his claims, did not bring suit until many years after the applicable statute of limitations had run.[9]

### D. Meyer's Objections Regarding "Referencing Errors" in the First Amended Complaint

---

[9] Even if the majority of Meyer's claims were not time barred—they are—their dismissal would be required on other bases (e.g., the application of one or more immunities, pleading deficiencies, and lack of personal or subject matter jurisdiction).

Meyer claims that the FAC contains "49 significant referencing errors," which the R & R referenced "in a general way," leading to an incorrect "interpretation" of the FAC. (Pl.'s R & R Objs. at 16; see Pl.'s Order Objs. at 9–10.) Meyer points to a declaration he submitted in support of his motion to file the SAC where he detailed these referencing errors. (See Second Decl. of Harley Dean Meyer [Doc. No. 272].)

The Court has carefully reviewed the R & R, July 8 Order, FAC, and Meyer's declaration regarding the referencing errors. Although it appears that some paragraphs of the FAC contain references to prior paragraphs that were incorrectly numbered, this did not affect Judge Bowbeer's analysis. Judge Bowbeer thoroughly and accurately addressed each of Meyer's claims despite his numerous typos in the FAC and SAC.

### E. Meyer's Objections Regarding His Attempts At Amending His Complaint

Meyer argues that he was not given enough time, especially considering his *pro se* status, to craft and file the FAC. (See Pl.'s R & R Objs. at 18.) He implies that Judge Thorson limited the time in which he could file the FAC because she was prejudiced against him. (See id. at 18.) Meyer suggests that Judge Bowbeer "was affected by [Judge Thorson's] decision to cut short the time for [Meyer] to file the FAC because of the number of errors that affected [Judge Bowbeer's] ability to fully understand some very subtle details and was given an incomplete FAC." (Id. at 19.) As best the Court can tell, Meyer argues that the failure to give him the time he required to file an "accurate" FAC lead to the supposed errors in the R & R, and that he is entitled to file the SAC because it allegedly cures many of the FAC's deficiencies. (See id. at 18–19; Pl.'s Order Objs. at 13–14, 18; Pl.'s Mot. for Second Amended Compl.)

16

"The court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, where the proposed amendment is futile, it is properly denied. See Geier v. Missouri Ethics Comm'n, 715 F.3d 674, 678 (8th Cir. 2013). Futility is where the proposed amended complaint "could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure . . . ." Cornelia I. Crowell GST Trust v. Possis Med., Inc., 519 F.3d 778, 782 (8th Cir. 2008). Put another way, where the proposed amendment fails to state a claim, it is futile and thus properly denied. U.S. ex rel. Gaudineer & Comito, L.L.P. v. Iowa, 269 F.3d 932, 936 (8th Cir. 2001). A motion to amend is also properly denied where it would create undue delay or unfairly prejudice the non-moving party. Kozlov v. Associated Wholesale Grocers, Inc., 818 F.3d 380, 394 (8th Cir. 2016). Litigants, even those who are *pro se*, are not entitled to endless amendments. See Caldwell v. Pesce, 83 F. Supp. 3d 472, 487 (E.D.N.Y. 2015), aff'd, 639 F. App'x 38 (2d Cir. 2016) (denying *pro se* litigant's motion to amend where his claims were time barred, the court lacked jurisdiction under the Rooker-Feldman doctrine, judicial immunity and immunity under the Eleventh Amendment applied, and the claims suffered from other substantive deficiencies that could not be cured through amendment); Brazdo v. Illinois Dep't of Prof'l Regulation, No. 94 C 134, 1997 WL 403500, at *6 (N.D. Ill. July 15, 1997) (dismissing plaintiff's § 1983 claim where there was "no reason to believe that this defect would be cured by granting [plaintiff] leave to file yet another amended complaint" since plaintiff's previous attempts at amending had failed, despite significant guidance from the court); Lovelace v. Hradek, No. 83 C 3209, 1987 WL 5691, at *2 (N.D. Ill. Jan. 13, 1987) ("While the rule [that *pro*

*se* complaints be held to a less stringent pleading standard] compels the courts to treat *pro se* pleadings with indulgence, it does not give plaintiff license to file endless amendments.").

Meyer's contentions about the time he was given to file the FAC, Judge Thorson's supposed prejudice against him, and the proposed SAC's ability to remedy the deficiencies in his claims are entirely meritless. Meyer was given nearly a month of additional time, beyond that afforded by Rule 15(a), to file the FAC. He had the benefit of the various Defendants' motions to dismiss (highlighting the deficiencies in his original Complaint) and Judge Thorson's directive that the FAC contain the short and plain statement of his claims required by Rule 8(a). Despite these accommodations, the FAC failed to cure the deficiencies of the original Complaint and instead focused on adding more defendants and claims. Now, more than a year after Meyer first filed suit, his proposed SAC is more of the same, adding still more defendants and claims without remedying the pleading deficiencies of the FAC.

The proposed SAC is a prime example of the sort of "unnecessarily prolix and complex" proposed pleading that warrants denying a motion to amend. See Smalley v. Stevens, No. 4:12-CV-00171 (ERW), 2012 WL 4049014, at *2 (E.D. Mo. Sept. 13, 2012); see also Gurman v. Metro Hous. & Redevelopment Auth., 842 F. Supp. 2d 1151, 1152–53 (D. Minn. 2011) (dismissing a complaint for failure to comply with Rule 8(a) where it "sprawled" over more than sixty pages and contained "every conceivable claim against every conceivable defendant"). Requiring the moving Defendants to yet-again sift through Meyer's nearly indecipherable pleadings under these circumstances

18

represents undue delay and prejudice. Moreover, it is clear from the thorough analysis of the R & R and July 8 Order that Meyer's proposed amendments are futile because he simply cannot cure the substantive deficiencies in many of his claims. See Caldwell, 83 F. Supp. 3d at 487. Even if some of Meyer's claims might be saved through amendment, he has shown an inability to effectively amend his pleadings despite guidance from the Court and the benefit of the moving Defendants' motions to dismiss. Meyer himself admits that the proposed SAC "is not finished but closer than before [sic] [,]" suggesting that even if his motion to file the SAC were granted, more motions to amend would necessarily follow. (See SAC at 2.)

### III. ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Objection to the Magistrate's Report and Recommendation [Doc No. 309] and Plaintiff's Objection to the Magistrate's Order on Plaintiff's Motion to Amend [Doc. No. 318] are **OVERRULED**.

2. The Report and Recommendation of Magistrate Judge Bowbeer dated June 27, 2016 [Doc. No. 292] is **ADOPTED**.

3. Magistrate Judge Bowbeer's Order on Plaintiff's Motion to Amend Complaint dated July 8, 2016 [Doc. No. 295] is **AFFIRMED**.

4. Plaintiff's Motion for a Second Amended Complaint [Doc. No. 267] is **DENIED**.

5. David Gronbeck's Motion to Dismiss [Doc. No. 74] is **GRANTED** and all claims against Gronbeck are **DISMISSED WITH PREJUDICE**.

6. Yuma Union High School District's Motion to Dismiss [Doc. No. 84] is **GRANTED** and all claims against Yuma Union High School District and J. Doe

17 are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

7. Colleen A. Harris-Pearson's Motion to Dismiss [Doc. No. 116] is **GRANTED** and all claims against Harris-Pearson are **DISMISSED WITH PREJUDICE**.

8. Sara Burmeister and Michael Read's Motion to Dismiss [Doc. No. 143] is **GRANTED** in that the official-capacity claims pursuant to 42 U.S.C. § 1983 against Burmeister and Read are **DISMISSED WITH PREJUDICE** and all other claims against Burmeister and Read are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

9. U.S. Bank, N.A., J. Doe 12, and J. Doe 13's Motion to Dismiss [Doc. No. 168] is **GRANTED** and all claims against U.S. Bank, N.A., J. Doe 12, and J. Doe 13 are **DISMISSED WITH PREJUDICE**.

10. Wells Fargo Bank, N.A.'s Motion to Dismiss [Doc. No. 175] is **GRANTED** and all claims against J. Doe 19, also known as Wells Fargo Bank, are **DISMISSED WITH PREJUDICE**.

11. HealthPartners, Inc.'s Motion to Dismiss [Doc. No. 180] is **GRANTED** and all claims against HealthPartners, Inc. are **DISMISSED WITH PREJUDICE**.

12. Federal Defendants' Motion to Dismiss [Doc. No. 184] is **GRANTED** and all claims against J. Doe 10, J. Doe 20, J. Doe 40, J. Doe 40, J. Doe 33, J. Doe 11, and J. Doe 18 are **DISMISSED WITH PREJUDICE**.

13. State Defendants' Motion to Dismiss [Doc. No. 193] is **GRANTED** and all claims against Referee Thomas Haeg, Judge Stephen C. Aldrich, Judge Marilyn Kaman, Referee Dean Maus, Judge Jamie L. Anderson, Referee Marybeth Dorn, Judge James T. Swenson, Judge Lucy A. Wieland, Judge Denise D. Reilly, Judge Kevin G. Ross, Judge Edward Toussaint, Jr., Judge Douglas L. Richards, Judge Charles A. Porter, Governor Mark Dayton, J. Doe 1, J. Doe 2, and J. Doe 3 are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 9, 2016          s/ Susan Richard Nelson
                                 SUSAN RICHARD NELSON
                                 United States District Judge