# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Harley Dean Meyer,<br><br>       Plaintiff,<br><br>v.<br><br>Virginia Ekola, Attorney, in her official capacity as an officer of Hennepin County District Court; Allan Lindsay; Diane Lindsay; Jean Peterson; and J. Does 4, 5, 6, 7, 8, 9, 21, 31, 32, 34, 35, 36, 38, 39, 47, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, and 91, in their official capacities,<br><br>       Defendants. | Case No. 15-cv-2564 (SRN/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

Harley Dean Meyer, Naewna Newspaper, ℅ Ladapa Tiwasingha, 96 Moo 3 Vibavadee Randsit Road, Laksi, Bangkok, Thailand 10210, pro se

Richard S. Reeves, 3944 Zenith Avenue South, Minneapolis, Minnesota 55410, for Virginia Ekola

Virginia K. Ekola, 3944 Zenith Avenue South, Minneapolis, Minnesota 55410, for Allan Lindsay and Diane Lindsay

---

HILDY BOWBEER, United States Magistrate Judge

      This matter is before the Court on Defendant Virginia Ekola's Motion for Summary Judgment [Doc. No. 448] and Defendants Allan Lindsay and Diane Lindsay's Motion for Summary Judgment [Doc. No. 503]. The motions were referred to this Court in Orders of Referral dated January 5, 2017, and March 6, 2017 [Doc. Nos. 454, 510].

This matter is also before the Court on Plaintiff Harley Dean Meyer's letter of February 14, 2017, concerning the identity of and proof of service on the remaining, unserved J. Doe Defendants [Doc. No. 474]; and letter of February 14, 2017, concerning his constitutional challenges to state procedures [Doc. No. 475].  For the reasons set forth below, the Court recommends that the motions for summary judgment be granted; all claims against the remaining, unserved J. Doe Defendants be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m); and the constitutional challenges be dismissed.

## I.    Background

This action arises from a child custody dispute in 2003 between Plaintiff Harley Dean Meyer ("Meyer") and his former wife, V.M., over their son, J.M., and related proceedings.  The underlying proceedings were set forth fully in this Court's Report and Recommendation (R. & R.) of June 27, 2016, and the Court incorporates here by reference the background section of that R. & R.  (R. & R. at 5-9 [Doc. No. 292], *adopted by* Order at 6-7 & n.3, Aug. 5, 2016 [Doc. No. 341].)

Defendant Virginia Ekola ("Ekola") is an attorney who represented V.M. during the divorce and custody proceedings.  (*See* First Amended Complaint ("FAC") ¶ 17 [Doc. No. 136]; Pl.'s Decl. Ex. 17 (Marital Termination Agreement)  [Doc. No. 469-1]; Pl.'s Decl. Ex. 41 (Order Prohibiting Change of Residence) [Doc. No. 469-15]; Pl.'s Decl. Ex. 45 (Motion to Prohibit Change of Residence) [Doc. No. 469-16]; Pl.'s Decl. Ex. 80 (Order to Amend Judgment and Decree) [Doc. No. 469-18].)

V.M. executed a Last Will and Testament on July 14, 2006, nominating her

brother, Allan Lindsay, as guardian of J.M. (Ekola Aff. Ex. 25 (Last Will and Testament art. XIII) [Doc. No. 452-25].) V.M. died in January 2012. (Allan Lindsay Aff. Ex. 6 (Certificate of Death) [Doc. No. 507-6]; Pl.'s Decl. Ex. 156 (email dated Jan. 23, 2012) [Doc. No. 520-34].) After V.M. died, Ekola represented Allan Lindsay during the subsequent guardianship proceedings. (Ekola Aff. ¶ 30 [Doc. No. 451].)[1] Allan Lindsay accepted the appointment of guardianship on January 20, 2012. (Lindsay Aff. Ex. 7 at 5 (Acceptance of Appointment) [Doc. No. 507-7].)[2] Meyer objected to the appointment, however, which terminated the appointment by operation of law. (*See* Allan Lindsay Aff. Ex. 13 (*In re: Guardianship of J.M*, No. A12-1393, slip op. at 2 (Minn. Ct. App. Apr. 30, 2013) (citing Minn. Stat. § 524.5-202(i)) [Doc. No. 507-13].)[3] Allan Lindsay was subsequently re-appointed as J.M.'s guardian. (Allan Lindsay Aff. Ex. 15 (*In re:*

---

[1] Meyer objected to the admissibility of nearly all the statements in Ekola's affidavit, including ¶ 30, on the grounds of hearsay, assumption of facts not in evidence, relevance, the best evidence rule, misstatement of evidence, and lack of authentication. (*See* Pl.'s Objs. [Doc. No. 468].) These boilerplate objections should be overruled as to the statement made in ¶ 30. The statement is relevant and does not constitute hearsay, raise authentication concerns, or violate the best evidence rule, nor does Meyer specify what facts were assumed but not in evidence or how evidence was misstated.

[2] Meyer objected to the admissibility of portions of Exhibit 7 on the grounds that the document assumes facts not in evidence, misstates evidence, and cannot be authenticated as genuine. (Pl.'s Objs. [Doc. No. 519].) These boilerplate objections should be overruled. Meyer does not identify which facts are not in evidence or how evidence was misstated. In addition, Meyer relies on the exhibit himself in attempting to show that Allan Lindsay was a state actor. (Pl.'s Mem. Opp'n Mot. Summ. J. at 41-42 [Doc. No. 517].)

[3] Meyer objected to the admissibility of Exhibit 13 on the grounds of relevance. (Pl.'s Objs. [Doc. No. 519].) This boilerplate objection should be overruled. The order is relevant to Meyer's § 1983 claim against Allan Lindsay arising from the guardianship proceedings.

*Guardianship of J.M.*, slip op. at 2 (Hennepin Cty. Dist. Ct. July 19, 2013)) [Doc.

No. 507-15].)[4]  Allan Lindsay is married to Diane Lindsay.  (Allan Lindsay Aff. ¶ 1

[Doc. No. 506].)

## II.    Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under

the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

dispute is "'genuine' . . . if  the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Id.*  In considering a motion for summary judgment,

the Court views the evidence and the reasonable inferences that may be drawn from the

evidence in the light most favorable to the nonmoving party. *McPherson v. O'Reilly*

*Auto., Inc.*, 491 F.3d 726, 730 (8th Cir. 2007).

The party opposing summary judgment may not rest on his allegations, "but must

set forth specific facts showing that there is a genuine issue for trial." *Anderson*,

477 U.S. at 256.  "Like any other civil litigant," a pro se plaintiff must respond to a

defendant's motion for summary judgment "with specific factual support for his claims to

avoid summary judgment." *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001).

---

[4] Meyer objected to the admissibility of Exhibit 15 on the grounds of relevance. (Pl.'s
Objs. [Doc. No. 519].)  This boilerplate objection should be overruled.  The order is
relevant to Meyer's § 1983 claim against Allan Lindsay arising from the guardianship
proceedings.

III.    **Ekola's Motion for Summary Judgment**

Meyer asserts the following claims against Ekola:

- Attempted aiding and abetting of aggravated forgery, under Minn. Stat. §§ 609.17, 609.05, and 609.625, for asking Hennepin County District Judge Stephen C. Aldrich to file a notice of motion and motion on behalf of Meyer (Count I, FAC ¶¶ 72-89);

- Abuse of process for attempting to aid and abet aggravated forgery, claiming the state court had jurisdiction, providing a sworn affidavit concerning J.M.'s education to the court, and conspiring to deprive Meyer of his rights (Count XI, FAC at 77[5], ¶ 165);

- Conspiring with V.M. to interfere with Meyer's fundamental parental rights, pursuant to 42 U.S.C. § 1985(3), by attributing to Meyer the filing of a change of custody motion (Count XII, FAC ¶¶ 166-70);

- Conspiring with Hennepin County Referee Thomas Haeg and Hennepin County District Judge Stephen C. Aldrich to interfere with Meyer's civil rights, pursuant to 42 U.S.C. § 1985(3), based on forgery and obstruction of legal process by Haeg and Aldrich (Count XIII, FAC ¶¶ 171-75);

- Aiding and abetting the deprivation of custodial or parental rights in 2003 and 2012, under Minn. Stat. §§ 609.26, subd. 1(3), and 609.02, subd. 9(3) (Count XXXXIX, FAC ¶¶ 470-72);

- Aiding and abetting kidnapping in 2003, under Minn. Stat. § 609.25, by helping Allan and Diane Lindsay take J.M. from Minnesota to Wisconsin (Count XXXXXIII, FAC ¶¶ 481-83);

- Aiding and abetting kidnapping, under 18 U.S.C. § 1201, by helping Allan and Diane Lindsay take J.M. from Minnesota to Wisconsin (Count XXXXXIV, FAC ¶¶ 484-86);

- Invasion of privacy after V.M. died by not allowing Meyer time to mourn and heal (Count XXXXXXI, FAC ¶¶ 535-539);

- Respondeat superior by committing wrongful acts as an employee in the course of

---

[5] When information or allegations are not included in a numbered paragraph, the Court refers to the page number of the FAC.

duty (Count XXXXXXV, FAC ¶¶ 546-47);

- False imprisonment in 2002 by preventing Meyer from removing J.M. from Minnesota (Count XXXXXXVII, FAC at 235, ¶¶ 581-84);

- Kidnapping in 2002, under Minn. Stat. § 609.25, by preventing J.M. from leaving with Meyer (Count XXXXXVIII, FAC ¶¶ 585-88);

- Kidnapping in 2002, under 18 U.S.C. § 1201, by preventing J.M. from leaving with Meyer (Count XXXXXIX, FAC ¶¶ 589-94);

- Deprivation of custodial or parental rights, under Minn. Stat.§§ 609.26, subd. 1(3), and 609.02, subd. 9(3), for "turn[ing] a blind eye" to the court's jurisdiction at a hearing on July 12, 2002 (Count XXXXXXX, FAC ¶¶ 595-600); and

- Two violations of 42 U.S.C. § 1983 (Count XXXXXXXIII, FAC ¶¶ 622-32; Count XXXXXXXII, FAC ¶¶ 695-99).

### A.    Claims Based on Violations of Criminal Law

Meyer brings several causes of action based on alleged violations of criminal statutes: attempted aiding and abetting of aggravated forgery, under Minn. Stat. §§ 609.17, 609.05, and 609.625; aiding and abetting the deprivation of custodial or parental rights, under Minn. Stat. §§ 609.26, subd. 1(3), and 609.02, subd. 9(3); aiding and abetting kidnapping, under Minn. Stat. § 609.25; aiding and abetting kidnapping, under 18 U.S.C. § 1201; kidnapping, under Minn. Stat. § 609.25; and kidnapping, under 18 U.S.C. § 1201.

With respect to the federal kidnapping claims, "[p]rivate individuals do not have the right to prosecute defendants for alleged violations of federal criminal statutes." *Sellors v. Obama*, No. 13-cv-2484 (SRN/JSM), 2014 WL 1607747, at *11 (D. Minn. Apr. 15, 2014) (citations omitted).  Thus, in general, "a civil plaintiff has no standing to

assert a claim arising under a criminal statute." *Id.* (quoting *Winkle v. Sargus*, Civ. No. 2:14-0003, 2014 WL 111173, at *1 (S.D. Ohio Jan. 10, 2014)). Of particular relevance here, "there is no private right of action for purported violations of the Federal Kidnapping Act," 18 U.S.C. § 1201. *Harnden v. Croswell-Lexington Cmty. Sch.*, No. 15-cv-12738, 2016 WL 2731188, at *2 (E.D. Mich. May 11, 2016) (citing *Monroe v. McNairy Cty.*, 850 F. Supp. 2d 848, 876 (W.D. Tenn. 2012); *Giano v. Martino*, 673 F. Supp. 92, 95 (E.D.N.Y. 1987). Consequently, Ekola should be granted summary judgment on claims brought pursuant to 18 U.S.C. § 1201.

With respect to the claims alleged pursuant to Minnesota law, "a criminal statute does not automatically give rise to a civil cause of action unless the statute expressly or by clear implication so provides." *Larson v. Dunn*, 460 N.W.2d 39, 47 n.4 (Minn. 1990). The Minnesota statutes cited by Meyer do not so provide, and Ekola is entitled to summary judgment on those claims, as well.

### B.    Abuse of Process Claim

Meyer alleges in the FAC that Ekola committed abuse of process by attempting to aid and abet the alleged forgery of the 2003 Amended Judgment and Decree, making a false representation to the state court that it had jurisdiction over the child custody dispute in 2002 and 2003, providing a sworn affidavit concerning J.M.'s education to the court, and generally conspiring to deprive Meyer of his rights.

In Minnesota, "the tort of abuse of process has two elements: (1) the existence of an ulterior purpose; and (2) the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether or not the result might

7

otherwise be lawfully obtained." *Questar Data Sys., Inc. v. Serv. Mgmt. Grp., Inc.*, 502 F. Supp. 2d 960, 963 (D. Minn. 2007). Meyer has not identified any evidence, direct or inferential, that Ekola had an ulterior purpose or that she used the judicial process to accomplish a result outside the scope of the custody proceedings. (*See* Pl.'s Mem. Opp'n Summ. J. at 47-48 [Doc. No. 466].) There is certainly no evidence that Ekola acted maliciously, as Meyer infers through his citation to *Hoppe v. Klapperich*, 28 N.W.2d 780, 792 (Minn. 1947). Consequently, the abuse of process claim fails.

Alternatively, the abuse of process claim is time-barred, whether under the six-year statute of limitations of Minn. Stat. § 541.05, subd. 1, or the two-year statute of limitations of Minn. Stat. § 541.07. The alleged acts occurred during the 2002 and 2003 custody proceedings, more than eleven years before Meyer filed suit in May 2015.

There are no grounds for equitable tolling. That is, Meyer has not established that he diligently pursued this claim or that an extraordinary circumstance stood in his way. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Nor would fraudulent concealment toll the statute of limitations. Ekola did not make any statements concealing a potential cause of action, false or otherwise, and any possible concealment could have been discovered through reasonable diligence. *See Williamson v. Prasciunas*, 661 N.W.2d 645, 650 (Minn. Ct. App. 2003).

Meyer's arguments that the 2003 Amended Judgment and Decree was a forgery and that the Hennepin County District Court lacked jurisdiction over the child custody proceedings do not provide a basis for tolling. There is no evidence substantiating Meyer's belief that the Amended Judgment and Decree was a forgery or that the state

court lacked jurisdiction.  Indeed, the Court has already determined that Meyer is barred by the *Rooker-Feldman* doctrine from challenging the validity of the Amended Judgment and Decree.  (R. & R. at 51 [Doc. No. 292]*, adopted by* Order at 10-13 & n.7 [Doc. No. 341].)

### C.    Section 1985

Meyer contends that, in 2002, Ekola conspired with V.M. to interfere with his fundamental parental rights, in violation of 42 U.S.C. § 1985(3), by attributing to him the filing of a change of custody motion.  He also accuses Ekola of conspiring with Hennepin County Referee Thomas Haeg and Hennepin County District Judge Stephen C. Aldrich to violate his civil rights by committing forgery and obstructing the legal process through the entry of the 2003 Amended Judgment and Decree.

These claims are time-barred.  The statute of limitations for a § 1985 claim is governed by the statute of limitations for personal injury claims in the state in which the claim arose.  *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) (§ 1983 claim); *Roach v. Owen*, 689 F.2d 146, 147 (8th Cir. 1982) ("In most situations a state's general statute of limitations applies to civil rights suits.").  Minnesota's longest limitations period for personal injury torts is six years.  *See* Minn. Stat. § 541.05, subd. 1.  Meyer's § 1985 claim against Ekola accrued, and the limitations period began to run, no later than 2003, more than eleven years before he filed suit.

Equitable tolling is not available.  Meyer has not established that he diligently pursued the § 1985 claims or that an extraordinary circumstance stood in his way.  Nor has Meyer shown that Ekola made false statements to conceal the cause of action or that

the concealment could not have been discovered through reasonable diligence. Furthermore, for the reasons discussed in Part III.B *supra*, any challenge to the validity of the 2003 Amended Judgment and Decree is ineffective.

### D.    Invasion of Privacy

Meyer alleges in the FAC that Ekola invaded his privacy after V.M. died by not allowing him time to mourn and heal.

The tort of "intrusion upon seclusion" is one type of invasion of privacy and is the most applicable here.  It "occurs when one 'intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person.'"  *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233 (Minn. 1998) (quoting Restatement (Second) of Torts § 625B (1977).)   "The elements of an intrusion-upon-seclusion claim are (1) an intrusion (2) into some matter in which a person has a legitimate expectation of privacy (3) that would be highly offensive to the ordinary reasonable person."  *Potocnik v. Carlson*, 9 F. Supp. 3d 981, 1001 (D. Minn. 2014).

Meyer fails to identify particular facts in the record to establish his intrusion-upon-seclusion claim.   At most, he explains in his opposition memorandum that the claim is based on Ekola's role in the guardianship proceedings.  (*See* Pl.'s Opp'n Mot. Summ. J. at 48-49 [Doc. No. 466].)  This is insufficient to establish any of the three required elements.  Meyer has not demonstrated that Ekola intruded, that any intrusion was into a private matter, or that the intrusion would have been highly offensive to a reasonable person.  Consequently, Ekola should be granted summary judgment on this claim.

10

### E.    Respondeat Superior

Meyer brings a claim of "respondeat superior" against Ekola for her alleged commission of wrongful acts as an employee.  (FAC ¶¶ 546-47.)  Meyer did not respond to Ekola's motion for summary judgment on this claim.  Furthermore, there is no standalone claim for "respondeat superior."  *Roufa v. Constantine*, No. C15-1379JLR, 2017 WL 120601, at *13 (W.D. Wash. Jan. 11, 2017) (citations omitted); *Goering v. IBP, Inc.*, No. 4-00-CV-90240, 2000 WL 35644742, at *4 (S.D. Iowa Sept. 8, 2000); *see Grospitz v. Abbott*, No. 04-4072-CV-C-NKL, 2005 WL 2649707, at *13 (W.D. Mo. Oct. 17, 2005).  Accordingly, summary judgment is warranted.

### F.    False Imprisonment

Meyer alleges that Ekola committed false imprisonment in July 2002 by scheduling an ex parte hearing that resulted in an order preventing him from removing J.M. from Minnesota.  (FAC at 235, ¶¶ 581-84.)

This claim is time-barred.  The statute of limitations for a false imprisonment claim is two years.  Minn. Stat. § 541.07(1).  The events upon which Meyer bases his false imprisonment claim against Ekola occurred, and the limitations period began to run, in 2002, more than twelve years before he filed suit.

Furthermore, equitable tolling is not warranted.  Meyer has not established that he diligently pursued the false imprisonment claim or that an extraordinary circumstance stood in his way.  Nor has Meyer shown that Ekola made false statements to conceal the cause of action or that the concealment could not have been discovered through reasonable diligence.  Ekola should be granted summary judgment on Meyer's false

imprisonment claim.

### G.    Section 1983

Meyer alleges two § 1983 claims against Ekola.  The first claim is based on Ekola's filing of a motion in 2002 to require Meyer to return J.M. to Minnesota from Arizona.  (FAC ¶¶ 622-32.)  The second claim is based on Ekola's representation of Allan Lindsay during the guardianship proceedings in 2012.  (FAC ¶¶ 695-99.)  As to the latter claim, Meyer alleges his procedural due process rights were violated because Ekola assisted Allan and Diane Lindsay in transporting J.M. from Minnesota to Wisconsin without proper guardianship papers.  (FAC ¶¶ 696-97.)

The § 1983 claim arising in 2002 is time-barred.  As with a § 1985 claim, the statute of limitations for a § 1983 claim is governed by the statute of limitations for personal injury claims in the state in which the claim arose.  *Wallace*, 549 U.S. at 387.  Minnesota's longest limitations period for personal injury torts is six years.  *See* Minn. Stat. § 541.05, subd. 1.  Meyer's first § 1983 claim accrued more than twelve years before he filed suit, and the limitations period expired in 2008, at the latest.  He presents no grounds for equitable tolling.

As to Meyer's § 1983 claim arising in 2012, Meyer must show that (1) Ekola "acted under color of state law," and (2) that her conduct deprived him of a constitutional right.  *See Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009).  "Only state actors can be held liable under Section 1983."  *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir.2001).  A lawyer's actions taken "in the performance of [her] duties as counsel . . . are not performed under color of state law."  *Harley v. Oliver*, 539 F.2d 1143,

1145-46 (8th Cir. 1976).  Meyer has not shown that any of Ekola's actions were taken

outside the scope of her duties as counsel.  Accordingly, Ekola was not a state actor for

purposes of § 1983, and the claim arising in 2012 should be dismissed.

### H.    Putative RICO Claim

Meyer argues in his opposition memorandum that Ekola is one of the unidentified

J. Doe Defendants against whom he has asserted a RICO claim, and that the criminal

violations asserted against her constitute predicate acts..  (Pl.'s Mem. Opp'n Mot. Summ.

J. at 38-39 [Doc. No. 466].)  This attempted amendment of the FAC, made at this stage of

the case and through a memorandum in opposition to summary judgment, is procedurally

deficient, prejudicial, untimely, and unduly burdensome.  This Court previously denied a

motion to amend filed by Meyer on the grounds of failure to cure deficiencies in

previously-allowed amendments, prejudice, undue delay, and undue burden.  (Order at

18-20, July 8, 2016 [Doc. No. 295].)  The Court incorporates that discussion fully here,

as the rationale applies with equal force to any putative RICO claim against Ekola.

In addition, there is no reason why Meyer could not have identified Ekola as one of the

J. Doe Defendants much earlier in the case.

Furthermore, even if properly pleaded, any RICO claim arising from the custody

proceedings in 2002 and 2003 would be time-barred.  "Civil RICO claims are governed

by a four-year statute of limitations."  *Klehr v. A.O. Smith Corp.*, 87 F.3d 231, 238 (8th

Cir. 1996).  Meyer has not established any grounds for equitable tolling.

Finally, with respect to the guardianship proceedings in 2012, any putative RICO

claim fails because Meyer has not demonstrated that Ekola engaged in a pattern of

racketeering activity. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("A violation of § 1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a pattern[] (4) of racketeering activity."). The plaintiff must prove at least two predicate acts, which "must be related and must amount to or pose a threat of continued criminal activity." *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 406 (8th Cir. 1999) (citation and internal quotation marks omitted). The only predicate act alleged by Meyer that would fall within the statute of limitations is aiding and abetting kidnapping in 2012. (*See* Pl.'s Mem. Opp'n Mot. Summ. J. at 39 [Doc. No. 466]; FAC ¶¶ 484-86.) Not only is a single act insufficient to establish a pattern of racketeering activity, but Meyer has not presented evidence to establish that Ekola aided and abetted kidnapping.

## IV.    Allan and Diane Lindsay's Motion for Summary Judgment

Meyer asserts the following claims against Allan and Diane Lindsay:

- Deprivation of custodial or parental rights in 2012, under Minn. Stat. §§ 609.26, subd. 1(3), and 609.02, subd. 9(3), for taking J.M. across state lines from Minnesota to Wisconsin (Count XXXXIII, FAC ¶ 469);

- Violation of the Hobbs Act through extortion, specifically, by threatening Meyer with taking money, denying his passport, and using the state's powers unlawfully (Count XXXXX, FAC ¶ 473);

- Aiding and abetting the deprivation of custodial or parental rights in 2012, pursuant to Minn. Stat. §§ 609.26, subd. 1(3), and 609.02, subd. 9(3), by allowing J.M. to be registered at a high school in Wisconsin without proof of guardianship (Count XXXXXI, FAC ¶¶ 474-75);

- Aiding and abetting kidnapping in 2003, under Minn. Stat. § 609.25, by taking J.M. from Minnesota to Wisconsin, with Ekola's assistance (Count XXXXXIII, FAC ¶¶ 481-83);

- Aiding and abetting kidnapping, under 18 U.S.C. § 1201, by taking J.M. from

14

Minnesota to Wisconsin, with Ekola's assistance (Count XXXXXIV, FAC ¶¶ 484-86); and

- a violation of 42 U.S.C. § 1983 (Count XXXXXXXXII, FAC ¶¶ 695-99).

### A.      Claims Based on Violation of Criminal Law

Meyer brings several causes of action based on alleged violations of criminal statutes: deprivation of custodial or parental under Minn. Stat. §§ 609.26, subd. 1(3), and 609.02, subd. 9(3); violations of the Hobbs Act; aiding and abetting the deprivation of custodial or parental rights, pursuant to Minn. Stat. §§ 609.26, subd. 1(3), and 609.02, subd. 9(3); aiding and abetting kidnapping, under Minn. Stat. § 609.25; and aiding and abetting kidnapping, under 18 U.S.C. § 1201.

As discussed in Part III.A. *supra*, there is no private right of action afforded by Minn. Stat. §§ 609.26, subd. 1(3), and 609.02, subd. 9(3); Minn. Stat. §§ 609.26, subd. 1(3), and 609.02, subd. 9(3); Minn. Stat. § 609.25; and 18 U.S.C. § 1201.  The same is true for an extortion claim under the Hobbs Act.  *See Wisdom*, 167 F.3d at 408-09; *Bajorat v. Columbia-Breckenridge Dev. Corp.*, 944 F. Supp. 1371, 1377-78 (N.D. Ill. 1996) (citing cases).  Consequently, Allan and Diane Lindsay should be granted summary judgment on these claims.

### B.      Section 1983

Meyer's sole remaining claim against Allan and Diane Lindsay is a § 1983 claim, based on their removal of J.M. from Minnesota to Wisconsin in 2012, allegedly without "guardianship papers."  (FAC ¶¶ 695-98.)  This claim fails because neither Allan Lindsay nor Diane Lindsay were state actors.

15

In Minnesota, an appointment of a guardian may be made by will. Minn. Stat.
§ 524.5-202(a). When V.M. died, the provision of her will appointing Allan Lindsay as
guardian became effective. *See* Minn. Stat. § 524.5-202(c). Allan Lindsay accepted the
appointment of guardianship on January 20, 2012. (Lindsay Aff. Ex. 5 (Acceptance of
Appointment) [Doc. No. 507-7].) Meyer objected to the appointment, however, which
terminated the appointment by operation of law. (*See* Allan Lindsay Aff. Ex. 13 (*In re:
Guardianship of J.M*, No. A12-1393, slip op. at 2 (Minn. Ct. App. Apr. 30, 2013) (citing
Minn. Stat. § 524.5-202(i)) [Doc. No. 507-13].) Allan Lindsay was subsequently re-
appointed as J.M.'s guardian. (Allan Lindsay Aff. Ex. 15 (*In re: Guardianship of J.M.*,
slip op. at 2 (Hennepin Cty. Dist. Ct. July 19, 2013)) [Doc. No. 507-15].)

Meyer argues that Allan Lindsay became a state actor for purposes of § 1983 by
accepting the appointment as J.M.'s guardian. (Pl.'s Mem. Opp'n Mot. Summ. J. at 41-
42, 49 [Doc. No. 517].) To the contrary, a court-appointed guardian is not a state actor.
*Peterson v. Arnold*, No. 09-cv-0890 (PJS/RLE), 2009 WL 2972486, at *5 (D. Minn. Sept.
10, 2009) (finding that a court-appointed guardian was not a state actor under § 1983);
*Terry v. Cty. of Suffolk*, 654 F. App'x 5, 6 (2d Cir. 2016) (holding that a court-appointed
guardian could not be sued under § 1983 because he was not a state actor); *Heinemann v.
Patchey*, No. 3:16-cv-774 (MPS), 2017 WL 1115203, at *4 (D. Conn. Mar. 24, 2017)
(stating "court-appointed administrators, guardians, or conservators . . .do not act under
color of state law"). Allan Lindsay's acceptance of the guardianship did not transform
him into a state actor.

Meyer next submits that Allan Lindsay acted under color of state law through

"joint participation" or a "symbiotic relationship" with the state.  (Pl.'s Mem. Opp'n Mot. Summ. J. at 49, 51 [Doc. No. 517].)  To establish state action under the "symbiotic relationship" theory, Meyer must show that the state "elected to place its power, property and prestige behind" the alleged constitutional violation or "insinuated itself into a position of interdependence" with Allan Lindsay.  *See Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961); *Sabri v. Whittier All.*, 122 F. Supp. 3d 829, 840 (D. Minn. 2015), *aff'd*, 833 F.3d 995 (8th Cir. 2016).  Meyer submits that a symbiotic relationship existed by virtue of the fact that Allan Lindsay paid a court fee of $322. (Pl.'s Mem. Opp'n Mot. Summ. J. at 49, 51 [Doc. No. 517].)  But payment of such a fee does not establish a symbiotic relationship.  *See Crissman v. Dover Downs Entm't Inc.*, 289 F.3d 231, 244 (3d Cir. 2002) (stating "it would be a radical concept if the state's receipt of funds from private actors were to convert them into state actors"); *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1453 (10th Cir. 1995) (receipt of economic benefits from a lease were not sufficient to establish a symbiotic relationship); *Phone Programs Ill., Inc. v. Nat'l Jockey Club, Inc.*, 692 F. Supp. 879, 884-85 (N.D. Ill. 1988) (finding the payment of fees and taxes insufficient to establish a symbiotic relationship); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 842-43 (1982) (holding that a private school's financial relationship with the state was no different from a government contractor's relationship with the state, and thus, there was not a symbiotic relationship).

To establish state action under the "joint participation" theory, Meyer must produce evidence of "a mutual understanding, or a meeting of the minds, between the private party and the state actor."  *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

Meyer submits that the January 20, 2012, appointment of guardianship and February 10, 2012, filing of an application for guardianship "involved significant procedures that Defendant Lindsay obtained significant aid from state officials." (Pl.'s Mem. Opp'n Mot. Summ. J. at 50 [Doc. No. 517].) The two documents do not, however, establish a mutual understanding or meeting of the minds. It is well-established that an individual's availment of state legal procedures is not joint participation. *Read v. Klein*, 1 F. App'x 866, 871 (10th Cir. 2001); *Schucker v. Rockwood*, 846 F.2d 1202, 1205 (9th Cir. 1988); *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1264 (D. Kan. 2008) (finding that an application for an order of custody did not create joint participation).

Meyer submits no evidence or specific argument pertaining to Diane Lindsay. In sum, because neither Allan Lindsay nor Diane Lindsay were state actors, they are entitled to summary judgment on Meyer's § 1983 claim against them.

### C.    Putative RICO Claim

Meyer argues in his opposition memorandum that Allan and Diane Lindsay may be J. Doe Defendants against whom he has asserted a RICO claim and that the criminal violations asserted against them constitute predicate acts. (Pl.'s Mem. Opp'n Mot. Summ. J. at 3, 54-57 [Doc. No. 517].) As with the attempted RICO claim against Ekola, this attempted amendment of the Amended Complaint, made at this stage of the case and through a memorandum in opposition to summary judgment, is procedurally deficient, prejudicial, untimely, and unduly burdensome. The rationale expressed in the Court's July 8 order denying leave to amend applies to any putative RICO claim against Allan and Diane Lindsay. In addition, there is no reason why Meyer could not have identified

the Lindsays as J. Doe Defendants much earlier in the case.

Moreover, any putative RICO claim fails because Meyer has not shown that Allan or Diane Lindsay engaged in a pattern of racketeering activity. In fact, Meyer has not presented evidence that either Allan or Diane Lindsay committed even one predicate act.

## V.    The Remaining, Unserved J. Doe Defendants

On February 1, 2017, the Court issued an order finding that Meyer had not shown good cause for failing to serve a summons and complaint on the remaining, unserved J. Doe Defendants, despite having more than a year and a half to do so. (Order at 1-2 [Doc. No. 471].) The Court instructed Meyer to file a supplement to the FAC identifying each remaining, unserved J. Doe Defendant by February 14, 2017; and serve a copy of the summons and complaint on each remaining J. Doe Defendant who had not been served in this matter by February 28, 2017. (*Id.* at 2.) The Court warned Meyer that if he did not comply, the Court would dismiss without prejudice any unserved J. Doe Defendant pursuant to Federal Rule of Civil Procedure 4(m). (*Id.*)

Rule 4(m) requires the dismissal without prejudice of an action in which a defendant is not timely served, but allows an extension of time for service "if the plaintiff shows good cause for the failure." Fed. R. Civ. P. 4(m). Meyer has not shown good cause for his failure to serve the remaining J. Doe Defendants. More than two years have passed since Meyer commenced this litigation, and more than a year has passed since Meyer filed the FAC. He was put on notice that he needed to identify and serve the remaining J. Doe Defendants, at the latest almost a year ago when the Court issued its first service deficiency order on June 30, 2016. [Doc. No. 294.]

On February 14, 2017, Meyer filed a letter indicating he wanted to conduct discovery to ascertain the identity of the remaining, unserved J. Doe Defendants and asked the Court to order "Defendants to disclose that information in their possession that is relative to the identification of" the unidentified Defendants.  (Meyer Letter at 1 [Doc. No. 474].)  But Meyer has not availed himself of any formal party or non-party discovery devices, either before his letter or in the three months since.  Nor has Meyer shown that the remaining named Defendants in this action (Virginia Ekola, Diane Lindsay, and Allan Lindsay) would have any information that would aid in the identification of the remaining, unserved J. Doe Defendants, most of whom were state or county employees.

Not only has Meyer failed to show good cause for a further extension, but it appears he has not stated a plausible claim against any of the remaining, unserved J. Doe Defendants.  The Court may consider the sufficiency of the FAC in deciding whether to grant a further extension under Rule 4(m).  *See Burns v. Aon Corp.*, No. 95-2854, 1996 WL 193163, at *2 (8th Cir. 1996) (finding it was not an abuse of discretion to dismiss a claim under Rule 4(m) when claim was without merit and plaintiff failed to show good cause for failure to serve); *Obumseli v. Citimortgage, Inc.*, No. 4:12-cv-706, 2013 WL 3197911, at *5 (E.D. Tex. June 21, 2013) (finding Rule 4(m) analysis unnecessary where the plaintiff failed to state a plausible claim against the unserved defendant), *R. & R. adopted*, 2013 WL 12153579 (E.D. Tex. Aug. 23, 2013); *Washington v. Schwarzenegger*, No. 09-01795CBMAJW, 2009 WL 4839944, at *4 (C.D. Cal. Dec. 14, 2009) (stating that a "complaint's facially obvious defects weigh against any finding that plaintiff would suffer 'severe prejudice' if the complaint is dismissed without prejudice" under Rule

4(m)).

To wit, the misrepresentation claim arising from the 2002 child custody proceedings is time-barred, and there is no basis for equitable tolling. (Count V, FAC at 42, ¶ 143.D-.E; *see* R. & R. at 10-14, 55-56 [Doc. No. 292]*, adopted by* Order at 13-15 [Doc. No. 341].) The misrepresentation claim is also barred by *Rooker-Feldman*. (*See* R. & R. at 48-52 [Doc. No. 292].)

The abuse of process claim is likewise barred by *Rooker-Feldman*. (Count XI, FAC at 77, ¶ 165.B; *see* R. & R. at 44, 48-52 [Doc. No. 292].)

The RICO claim alleged against J. Does 49-82 contains no factual allegations against any individual defendant (*see* FAC ¶ 382.B ("J. Doe 49 thru [sic] 82 were associated by participating in some way the enterprise [sic]."")), and thus fails to state a claim on which relief could be granted. The RICO claim is also time-barred. (*See* R. & R. at 32, 46, 55-56 [Doc. No. 292]; R. & R. at 7, 8, 9, 10 [Doc. No. 383].)

Meyer's § 1983 claim based on the garnishment of wages by a state or county employee is barred by *Rooker-Feldman*. (Count XXIX, FAC at 205, ¶¶ 408-12; *see* R&R at 48-52 [Doc. No. 292].)

The § 1983 claim based on "captured tax returns/tax rebates" against "[e]ither a state o[r] county employee" (Count XXX, FAC at 206, ¶¶ 413-17) is not cognizable because all of Meyer's claims against county or state employees were brought against those individuals in their official capacities (FAC at 8-11). This means the claim is treated as having been brought directly against the State of Minnesota or Hennepin County. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978); (R. & R. at

52-53 [Doc. No. 292].)  Any such claim against the State of Minnesota fails because

Minnesota has not waived its Eleventh Amendment immunity from suit in federal court

for § 1983 claims for damages, *see Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir.

1997), and Congress did not abrogate that immunity by enacting § 1983, *Quern v.

Jordan*, 440 U.S. 332, 345 (1979).  Any such claim against Hennepin County fails

because vicarious liability is not applicable to § 1983 claims, and Meyer has not pleaded

that Hennepin County had a policy or custom that "played a part in the violation of

federal law."  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

　　Meyer also brings a § 1983 claim based on "Levied savings from a savings

account – Bank Fraud" against "[e]ither a state o[r] county employee."  (Count XXXI,

FAC at 207, ¶¶ 418-21.)  The Court has already determined that a conversion claim based

on the same levy, which occurred in 2007, is time-barred by a six-year limitations period

and not subject to equitable tolling.  (R. & R. at 23-26 [Doc. No. 292].)  This § 1983

claim is similarly time-barred.  Alternatively, the claim fails because it is brought against

the state or county employee in his or her official capacity; Minnesota is protected from

suit by the Eleventh Amendment; and there are no allegations that a Hennepin County

policy or custom was the moving force behind the alleged violation.

　　Meyer's § 1983 claim based on an attempted levy of a Wells Fargo bank account

fails because he alleges only that a state or county employee *attempted* to take money

from his account, not that the employee actually did so.  (Count XXXII, FAC at 207,

¶¶ 422-25.)  The Court previously determined, therefore, that Meyer was not actually

deprived of any property interest.  (R. & R. at 28-29 [Doc. No. 292].)  Alternatively, the

claim fails because it is brought against the state or county employee in his or her official capacity; Minnesota is protected from suit by the Eleventh Amendment; and there are no allegations that a Hennepin County policy or custom was the moving force behind the alleged violation.

Meyer next asserts a § 1983 claim against either a Hennepin County or a Minnesota employee for entering the 2003 Amended Judgment and Decree into a computer system shared with HHS. (Count XXXIII, FAC at 208, ¶¶ 426-28.) This claim fails because it is brought against the state or county employee in his or her official capacity; Minnesota is protected from suit by the Eleventh Amendment; and there are no allegations that a Hennepin County policy or custom was the moving force behind the alleged violation. In addition, the allegations do not state a plausible claim that the entry of the document into the computer system violated a constitutional right.

Meyer's 42 U.S.C. § 1981 claim against either a state or county employee fails as a matter of law, as previously determined by the Court. (Count XXXIV, FAC at 208, ¶¶ 429-36; R. & R. at 41-42 [Doc. No. 292].) Alternatively, the claim fails because it is brought against the state or county employee in his or her official capacity; Minnesota is protected from suit by the Eleventh Amendment; and there are no allegations that a Hennepin County policy or custom was the moving force behind the alleged violation.

There are no facts alleged to support Meyer's § 1983 claim against an unnamed J. Doe Defendant based on "probate." (Count XXXXII, FAC at 213, ¶¶ 467-68.) Thus, Meyer fails to state a plausible claim for relief.

The willful blindness claim against the unnamed supervisor of Marnette Hoisve is

not an independent civil cause of action.  (Count XXXVI, FAC at 210, ¶¶ 442-45; R. &

R. at 18-18 [Doc. No. 292].)

Finally, Meyer's claims brought pursuant to federal and state criminal statutes fail

for the reasons discussed in Part III. A *supra*.  (Count XXXXXIII, FAC at 216, ¶¶ 481-

83; Count XXXXXIV, FAC at 216, ¶¶ 484-86.)

In sum, Meyer has not shown good cause for his failure to identify and serve the

remaining, unserved J. Doe Defendants, and no further extension is warranted.  The

Court therefore recommends that all claims against J. Does 4, 5, 6, 7, 8, 9, 21, 31, 32, 34,

35, 36, 38, 39, 47, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71,

72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, and 91 be

dismissed without prejudice, pursuant to Rule 4(m).

## VI.    Constitutional Challenges

Meyer wrote a letter to this Court on February 14, 2017, asking the Court to

clarify the status of his constitutional challenges to state procedures.  Meyer raises three

constitutional challenges in the FAC.  He challenges: (1) the federal government's

provision of incentives to the states (the "State Court Funding Scheme"); (2) the

procedure for appointing a guardian under Minn. Stat. § 524.5-202; and (3) the

"continuing jurisdiction" provision of the Uniform Child Custody Jurisdiction and

Enforcement Act, Minn. Stat. § 518D.202(a).  (Count XXXXXXIV, FAC at 225, ¶ 545.)

### A.    State Court Funding Scheme

The Court addressed Meyer's constitutional challenge to the federal government's

provision of incentives to the states in the June 27, 2016, R. & R.  (R. & R. at 38-39

[Doc. No. 292].)  No further discussion is warranted.

**B.    Minnesota Statute § 524.5-202**

As to the second constitutional challenge, Meyer alleges that "§ 524" violates due process because it permits guardians to be appointed by will, and allows a parent to designate a guardian even though the other parent may be willing and able to care for the child.  (FAC ¶ 545.A.)  Meyer refers to this challenge in his memoranda opposing Ekola's and the Lindsays' motions for summary judgment.  (Pl.'s Mem. Opp'n Mot. Summ. J. at 33-34 [Doc. No. 466]; Pl.'s Mem. Opp'n Mot. Summ. J. at 27-37 [Doc. No. 517].)[6]

It is well-established that parents have a fundamental liberty interest in the care, custody, and control of their children.  *Troxel v. Granville*, 530 U.S. 57, 65 (2000).  Once such an interest is established, the question is the amount of process due before a parent may be deprived of the interest.  *Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976).

Meyer overlooks key provisions of Minn. Stat. § 524.5-202, which establish that the "appointment of a guardian by a parent does not supersede the parental rights of either parent," § 524.5-202(g), and that the authority of a guardian appointed under the statute terminates automatically when a parent objects to the appointment, § 524.5-202(i); § 524.5-203.  This termination, in fact, occurred when Meyer objected to V.M.'s appointment of Allan Lindsay as J.M.'s guardian.  (*See* Allan Lindsay Aff. Ex. 13 (*In re: Guardianship of J.M*, No. A12-1393, slip op. at 2 (Minn. Ct. App. Apr. 30, 2013) (citing

---

[6] Meyer attempts to amend his constitutional challenge from Minn. Stat. § 524.5-202 to Minn. Stat. § 257B.  (Pl.'s Mem. Opp'n Mot. Summ. J. at 32 [Doc. No. 517].)  This eleventh-hour attempt to amend is denied for the reasons set forth in Part III.H.

Minn. Stat. § 524.5-202(i)) [Doc. No. 507-13].)  Meyer's objection automatically

terminated the guardianship appointment by operation of law.  Meyer has not described

what further process the statute should have provided.  The Court concludes that the

constitutional challenge to Minn. Stat. § 524.5-202 fails.

Alternatively, the claim is barred by *Rooker-Feldman*.  Meyer's constitutional

challenge to Minn. Stat. § 524.5-202 is inextricably intertwined with the state court

judgments in the guardianship proceedings, such that the challenge can succeed only if

the judgments are deemed erroneous or invalid.

### C.    Minnesota Statute § 518D.202(a)

Meyer's third constitutional challenge is to the procedures used to determine

whether a state court may exercise continuing jurisdiction under Minn. Stat.

§ 518D.202(a).  (FAC ¶ 545.C.)  Specifically, he submits that a court's acceptance of

"weak" evidence, such as an affidavit, violates equal protection.  (FAC ¶ 545.C.)

Minnesota Statute § 518D.202(a) provides for a state court's continuing

jurisdiction over a child custody determination made by that court until:

> (1) a court of this state determines that the child, the child's parents, and
> any person acting as a parent do not have a significant connection with this
> state and that substantial evidence is no longer available in this state
> concerning the child's care, protection, training, and personal relationships;
> or

> (2) a court of this state or a court of another state determines that the child,
> the child's parents, and any person acting as a parent do not presently reside
> in this state.

Minn. Stat. § 518D.202(a).

As an initial matter, § 518D.202(a) does not define the type of evidence that a

court may accept to establish or overcome continuing jurisdiction.  Thus, Meyer's challenge to the adequacy of an affidavit is inapposite.

Second, § 518D.202(a) does not implicate equal protection concerns.  "In general, the Equal Protection Clause requires that state actors treat similarly situated people alike."  *Bogren v. Minnesota*, 236 F.3d 399, 408 (8th Cir. 2000).  "Equal protection analysis turns on the classification drawn by the statute in question.  Unless a law places a burden on a fundamental right or focuses on a suspect class, it is subject to a rational basis standard of scrutiny."  *Knapp v. Hanson*, 183 F.3d 786, 789 (8th Cir. 1999).  "Suspect classifications include those such as race, alienage, gender, or national origin."  *Id.*

The statute at issue does not make any suspect classifications.  It simply differentiates between families that have a significant connection with or reside in the State of Minnesota, and families that do not.  A rational relationship exists between a state's retention of jurisdiction over a child custody determination and the child's presence in or connection to the state.  The Court concludes that § 518D.202(a) does not violate the Equal Protection Clause.

Alternatively, the claim is barred by *Rooker-Feldman*.  Meyer's constitutional challenge to Minn. Stat. § 518D.202(a) is inextricably intertwined with the state court judgments in the guardianship proceedings, such that the challenge can succeed only if the judgments are deemed erroneous or invalid.

Based on the above and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1. Virginia Ekola's Motion for Summary Judgment [Doc. No. 448] be **GRANTED**;

2. Allan Lindsay and Diane Lindsay's Motion for Summary Judgment [Doc. No. 503] be **GRANTED**;

3. All claims against J. Does 4, 5, 6, 7, 8, 9, 21, 31, 32, 34, 35, 36, 38, 39, 47, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, and 91 be **DISMISSED WITHOUT PREJUDICE**, pursuant to Federal Rule of Civil Procedure 4(m);

4. Meyer's constitutional challenges be **DISMISSED**; and

5. **JUDGMENT BE ENTERED ACCORDINGLY**.


Dated:  May 26, 2017                      *s/ Hildy Bowbeer*
                                          HILDY BOWBEER
                                          United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.