UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Harley Dean Meyer,<br><br>    Plaintiff,<br><br>v.<br><br>Virginia Ekola, Attorney, in her official capacity as an officer of Hennepin County District Court; Allan Lindsay; Diane Lindsay; Jean Peterson; and J. Does 4, 5, 6, 7, 8, 9, 21, 31, 32, 34, 35, 36, 38, 39, 47, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, and 91, in their official capacities,<br><br>    Defendants. | Case No. 15-cv-2564 (SRN/HB)<br><br><br>ORDER |

Harley Dean Meyer, *pro se*, Naewna Newspaper, % Ladapa Tiwasingha, 96 Moo 3 Vibavadee Randsit Road, Laksi, Bangkok, Thailand 10210, Plaintiff

Richard S. Reeves, 3944 Zenith Avenue South, Minneapolis, Minnesota 55410, for Defendant Virginia Ekola

Virginia K. Ekola, 3944 Zenith Avenue South, Minneapolis, Minnesota 55410, for Defendants Allan Lindsay and Diane Lindsay

SUSAN RICHARD NELSON, United States District Judge

  This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Bowbeer dated May 26, 2017 [Doc. No. 524]. Plaintiff Harley Dean Meyer ("Meyer") filed Objections to the Report and Recommendation ("Objs.") [Doc. No. 525]. For the reasons set forth below, the Court overrules Meyer's Objections,

adopts the R&R in its entirety, and grants Defendant Ekola's, Allan Lindsay's, and Diane Lindsay's Motions for Summary Judgment.

Also before the Court is the Report & Recommendation of Magistrate Judge Bowbeer dated December 19, 2016 [Doc. No. 435]. In the December 19, 2016 R&R, Magistrate Judge Bowbeer recommended that all claims against Defendant Jean Peterson be dismissed without prejudice. (Dec. 19, 2016 R&R at 2.) Meyer did not file any objections to that Report and Recommendation in the time period permitted. Accordingly, based on the December 19, 2016 R&R, and all of the files, records and proceedings herein, the Court adopts the December 19, 2016 R&R and dismisses without prejudice all claims against Defendant Jean Peterson.

In addition, before the Court is Plaintiff's Objection [Doc. No. 444] to the Order of Magistrate Judge Bowbeer dated December 15, 2016 [Doc. No. 434]. In the December 15, 2016 Order, Magistrate Judge Bowbeer denied without prejudice Meyer's Motion to Appoint Counsel [Doc. No. 417] and his Motion for an Extension of Time [Doc. No. 418]. In light of the Court's summary judgment ruling, addressed below, Meyer's Objection to the December 15, 2016 Order is denied as moot.

**I.     BACKGROUND**

The background of this case was set forth in previous orders and is only recounted here to the extent necessary to rule on Meyer's Objections. This action involves Meyer's eighty-two state and federal claims against twenty-seven named Defendants—including Defendants Virginia Ekola ("Ekola"), Allan Lindsay ("A. Lindsay"), and Diane Lindsay ("D. Lindsay") (collectively, "Defendants")—and seventy-seven J. Doe Defendants—

including those J. Doe Defendants referenced in the caption of this Order. (*See* First Am. Compl. ("FAC") [Doc. No. 136]; Order dated 8/5/2016 ("August 5 Order") at 5 [Doc. No. 341].) Meyer was allowed to amend his complaint once—wherein he added more defendants and claims—but his second attempt, where he again sought to add more defendants and claims, was denied based on futility, undue delay and prejudice, and his repeated failures to abide by this Court's orders, the Local Rules, and the Federal Rules of Civil Procedure. (*Id.* at 4–5, 16–19.)

All of Meyer's claims stem from a 2003 child custody dispute between Meyer and his former wife (V.M.) over their son (J.M.) and related proceedings in Minnesota state court. (*See id.* at 7.) Ekola is an attorney who represented V.M. in the divorce and custody proceedings. In those proceedings, V.M. was granted sole legal and physical custody over J.M. (Decl. of Allan and Diane Lindsay ("Lindsay Decl.") [Doc. No. 507], Ex. 3 [Doc. No. 507-3].) Sometime after 2004, Meyer moved to Thailand, where he resides to this day.

V.M. named her brother, A. Lindsay, as J.M.'s guardian in her will in 2006. (R&R at 2–3; Lindsay Decl., Ex. 4 [Doc. No. 507-4].) D. Lindsay is A. Lindsay's wife. Later, in 2011, after V.M. was diagnosed with cancer and began treatment, she asked A. Lindsay to help care for J.M. (Aff. of Allan Lindsay at ¶ 5 [Doc. No. 506].) In January of 2012, V.M. and A. Lindsay executed a "Designated Temporary Custodian Agreement" (the "Designation Agreement") that sought to appoint A. Lindsay as co-custodian of J.M. pursuant to Minn. Stat. § 257B. (Lindsay Decl., Ex. 5 [Doc. No. 507-5].) In it, V.M. stated that she was suffering from a physically incapacitating disease. (*See id.* at 2.)

3

V.M. explained that she believed Meyer was in Thailand, but did not know his address or how to contact him other than through an email address, and that Meyer had not seen J.M. since 2003. (*Id.* at 1.) The Designation Agreement purported to give A. Lindsay the authority to make custodial and legal decisions related to J.M. and suggests that the parties intended it to be effective immediately. (*Id.* at 2.) It also stated that V.M. intended for A. Lindsay to be appointed as J.M.'s guardian upon her death, pursuant to Minn. Stat. § 524.5-201 and other related statutes. (*Id.*)

Days after the Designation Agreement was signed, V.M. died. (Lindsay Decl., Ex. 6 [507-6].) There is no indication that A. Lindsay ever petitioned a court to have the Designation Agreement approved. Instead, on January 20, 2012, he accepted the guardianship appointment contained in V.M.'s will. (Lindsay Decl., Ex. 7 at 5 [Doc. No. 507-7].)

Less than thirty days after A. Lindsay accepted the appointment in V.M.'s will, Ekola filed a Petition for Appointment (the "Guardianship Petition") in Hennepin County district court.[1] (*Id.* at 1–3.) The Guardianship Petition was served on Meyer. (*Id.* at 14–15; *see* Lindsay Decl., Ex. 9 [Doc. No. 507-9].) A hearing on the Guardianship Petition was held in April of 2012 and Meyer attended the hearing and objected to A. Lindsay's appointment, arguing that he should be given full legal and physical custody over J.M. (*See* Lindsay Decl., Ex. 10 [Doc. No. 507-10].) The district court granted the Guardianship Petition, appointed A. Lindsay to serve as guardian "alongside" Meyer, and explained that Meyer would need to raise his custodial challenges in family court. (*See*

---

[1] Ekola represented A. Lindsay throughout the guardianship proceedings.

4

*id.* at 3–4.) Importantly here, the court made the appointment pursuant to Minnesota's guardianship statutes, Minn. Stat. § 524.5-202 *et seq.*, with no mention of the custodianship statutes, Minn. Stat. § 257B *et seq.*, or the Designation Agreement. (*See id.* at 2–4.)

Meyer appealed the decision and the Minnesota Court of Appeals reversed and remanded. (Lindsay Decl., Ex. 13 [Doc. No. 507-13].) Specifically, the court found that although V.M.'s appointment of A. Lindsay in her will was valid and effective upon her death, that appointment terminated by operation of law when Meyer objected and thus the probate court could not confirm an appointment that no longer existed. (*Id.* at ¶¶ 4–5.) The court of appeals remanded the case to the district court to consider the appointment of an emergency or temporary guardian for J.M. (*Id.* at ¶¶ 6–7.) On remand, the district court appointed A. Lindsay as J.M.'s temporary guardian pursuant to Minn. Stat. § 524.5-204(b). ((Lindsay Decl., Ex. 15 [507-15].) Meyer did not appeal this decision.

Generally speaking, Meyer now contends that all of the state court proceedings surrounding the 2003 custody dispute and 2012 guardianship dispute were fraudulent, procedurally deficient, involved negligence, and amounted to a civil conspiracy against him perpetrated by nearly every individual who had any involvement with those proceedings and the events they addressed. (*See* FAC; August 5 Order at 7–8.) Meyer also raises constitutional challenges to the federal government's provision of financial incentives to the states, Minnesota's statutory scheme for appointing guardians, and the "continuing jurisdiction" provision of Minnesota's Uniform Child Custody Jurisdiction and Enforcement Act. (*See* FAC at ¶ 545.)

The R&R recommends granting Defendants' Motions for Summary Judgment because Meyer's claims suffer from one or more of the following deficiencies: (1) they are based on criminal statutes that do not provide a civil cause of action; (2) Meyer failed to produce competent admissible evidence that supports one or more elements of the claim; (3) the claim is time barred and there is no basis for equitable tolling; (4) the Court is prohibited from considering the claim under the *Rooker-Feldman* doctrine; or (5) the claim suffers from a fundamental legal deficiency (e.g., the claim may only be asserted against a state actor and the Defendant at issue is not a state actor). (R&R at 5–19.) The R&R also recommends that Meyer's claims against the unserved J. Doe Defendants be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m). (*Id.* at 19–24.) The reasons for this recommendation of dismissal are that Meyer failed to show good cause as to why the J. Doe Defendants remain unserved more than two years after the case began and because he has not stated plausible claims against them.[2] (*See id.*) Finally, the R&R recommends dismissing Meyer's constitutional challenges for the following reasons: (1) they fail as a matter of law; and, (2) the Court is prohibited from considering the claim under the *Rooker-Feldman* doctrine. (*Id.* at 24–27.)

Meyer filed a series of objections to the R&R. (*See* Objs.) Some can be quickly resolved. First, Meyer alleges that Magistrate Judge Bowbeer and this Court criticize his lack of evidence without "proving" this "claim." (Objs. at 2.) Meyer fails to appreciate that it is not the Court's place to prove his claims—that responsibility falls to him as the

---

[2] Meyer did not file any objection to this portion of the R&R. (*See* Objs.) Still, the Court has carefully reviewed Magistrate Judge Bowbeer's analysis, finds it to be persuasive and correct, and thus adopts it here.

plaintiff. His failure to state legally cognizable claims and produce competent admissible evidence, despite more than two years in litigation, is fatal at summary judgment and requires that his claims be dismissed. *See Ingrassia v. Schafer*, 825 F.3d 891, 896 (8th Cir. 2016); *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 844 (8th Cir. 2015). Second, Meyer makes some general objections to living in a "post-truth era" dominated by "fake news" and "alternative facts," which makes it "cumbersome" for him to address Defendants' motions and object to the R&R. (Objs. at 3.) The burden on Meyer to support and defend his claims is a well-established obligation placed on every plaintiff. Third, some of Meyer's objections simply reference arguments he made in previous filings. (*See id.* at 6, 8, 9, 10.) This Court rejected those arguments and will not reconsider them here, especially since Meyer presents no reason to do so other than his disagreement with the prior rulings, which is not a valid objection. *See Munt v. Larson*, No. 15-cv-0582 (SRN/SER), 2015 WL 5673108, at *7 (D. Minn. Sept. 23, 2015); *Carlone v. Heat & Frost Insulators & Allied Workers Local 34*, No. 14-cv-579 (SRN/JSM), 2014 WL 5438493, at *6 (D. Minn. Oct. 23, 2014).

Meyer's substantive and specific objections are as follows: (1) a series of evidentiary challenges to exhibits referenced in the R&R; (2) that some of Meyer's constitutional challenges were not properly assessed; and, (3) that a jury should resolve what Meyer sees as fact disputes. The Court addresses these objections below.

## II. DISCUSSION

### A. Legal Standard

The Court must conduct a *de novo* review where specific objections are made to a magistrate judge's report and recommendation on a dispositive motion. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); D. Minn. L.R. 72.2(b).

Summary judgment is proper if, drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1107 (8th Cir. 2016). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed. *Id.* at 323. However, a party opposing summary judgment "'may not rest upon the mere allegation or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial,' and 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Ingrassia*, 825 F.3d at 896 (quoting *Anderson*, 477 U.S. at 256–57). "[T]he nonmoving party must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Conseco Life Ins. Co. v. Williams*, 620

F.3d 902, 910 (8th Cir. 2010) (quoting *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Self-serving affidavits alone cannot defeat a properly supported motion for summary judgment. *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006). Rather, a plaintiff "must substantiate [self-serving] allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005). Summary judgment is also proper where the non-moving party fails "'to make a showing sufficient to establish the existence of an element essential to that party's case . . . .'" *Walz*, 779 F.3d at 844 (quoting *Celotex*, 477 U.S. at 322).

### B. Evidentiary Objections

Meyer raised a series of boilerplate objections to the evidence that Magistrate Judge Bowbeer considered when recounting the facts of this case. (*See* R&R at 3–4 n.1–4; Pl.'s Objs. to Mag. Judge Bowbeer [Doc. No. 519].) However, these objections—which Magistrate Judge Bowbeer recommended be overruled—were cursory and contained no substantive analysis or argument. (*See* R&R at 3–4 n.1–4; Pl.'s Objs. to Mag. Judge Bowbeer.) In his Objections to the R&R, Meyer now tries to bolster these evidentiary objections with additional arguments. (*See* Objs. at 4–6.) Meyer may not raise arguments and issues with this Court that he did not clearly present to Magistrate Judge Bowbeer. *See Ridenour v. Boehringer Ingelheim Pharm., Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012); *Hammann v. 1-800 Ideas.com, Inc.*, 455 F. Supp. 2d 942, 947–48 (D. Minn. 2006).

Furthermore, even considering the substance of these new arguments, the Court finds them to be without merit. Meyer's new arguments fall into two categories. First, he contends that some of the evidence is unreliable because it contains information he believes is inaccurate, "assumes facts not in evidence," or is irrelevant. (Objs. at 4–5.) Meyer claims that he has submitted evidence to support these objections, but does not point to any in the record. (*See* Objs. at 4.) Meyer's bald assertions—and even self-serving affidavits—cannot defeat Defendants' properly supported Motions for Summary Judgment. *See Conolly*, 457 F.3d at 876.

Moreover, some of Meyer's assertions are simply incorrect. For instance, he believes the state court opinions regarding A. Lindsay's guardianship over J.M. are irrelevant because "[t]he allegations against the Defendants all took place prior" to those proceedings. (Objs. at 5.) However, this position is directly contradicted by the fact that the state court guardianship proceedings dealt with the exact same factual circumstances on which Meyer's current claims are based—the appointment of A. Lindsay as J.M.'s guardian in 2012. (*See, e.g.,* FAC at ¶¶ 469–75, 622–32, 695–99.)

Second, some of Meyer's evidentiary objections are premised on the validity of his legal arguments concerning the constitutionality of Minnesota's guardianship laws. (*See* Objs. at 4.) As described below, Meyer's legal theories are incorrect and thus these objections lack merit.

### C. Objections Related to Meyer's Constitutional Challenges

#### 1. Minnesota's Guardian and Custodianship Statutes

Meyer claims that the R&R's analysis of his constitutional challenge to Minnesota's guardianship statutes was incomplete because it did not consider Minn. Stat. § 257B *et seq*. (Objs. at 6–7.) These statutes set the procedures for designating a custodian for a minor. *See* Minn. Stat. § 257B *et seq*. Meyer admits that he never cited or referenced Minn. Stat. § 257B in his First Amended Complaint. (*See* Objs. at 6.) He now argues that these statutes are unconstitutional because they allow for custodians to be appointed without notice to the non-designating parent or court "oversight." (*Id.* at 7.)

Meyer's challenge to Minnesota's custodianship statutes fails as a matter of law for at least two reasons. First, Meyer lacks standing to bring his challenge—and this Court lacks subject matter jurisdiction over his claim—because there is no connection between the injuries he allegedly suffered and the custodianship statutes. *See Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 992 (8th Cir. 2016) (holding that Article III standing requires, in relevant part, "a sufficient causal connection between the injury and the conduct complained of"). A. Lindsay initially assumed guardianship over J.M. pursuant to the appointment contained in V.M.'s will and by operation of Minn. Stat. § 524.5-202, not the Designation Agreement or any of Minnesota's custodianship statutes. He was later appointed as J.M.'s temporary guardian by the district court pursuant to Minn. Stat. § 524.5-204(b). Since the custodianship statutes found in Minn. Stat. § 257B played no part in this process, Meyer lacks standing, and this Court lacks subject matter jurisdiction to consider his claim.

11

Second, Meyer's claims lack legal merit. A properly designated custodian gains the authority to act for the child only after a "triggering event" (e.g., the designating parent's death, incapacitation, debilitation, etc.) and upon court approval of the designation. *See* Minn. Stat. § 257B.06, subd. 1, 4. Before a court approves a custodian's designation, the non-designating parent must be given notice. Minn. Stat. § 257B.05, subd. 2. Moreover, "[t]he commencement of a co-custodian's or custodian's authority . . . does not, by itself, divest a parent or legal custodian of any parental or custodial rights." Minn. Stat. § 257B.06, subd. 5. Meyer presents no authority, nor can the Court find any, that suggests these procedures are constitutionally deficient. Moreover, even assuming that the Designation Agreement was ineffective, because it did not contain a triggering event or because Meyer was never given notice of the document, this fact is irrelevant to his claims because A. Lindsay assumed custody over J.M. based on the guardianship appointment in V.M.'s will, not the Designation Agreement or Minnesota's custodianship statutes.

To the extent that Meyer objects to the R&R's analysis of his due process challenge to Minnesota's guardianship statutes, those objections are without merit. Minnesota allows a parent to appoint a guardian for his/her child by will. Minn. Stat. § 524.5-202(a). That appointment is effective upon the parent's death. Minn. Stat. § 524.5-202(c). However, within thirty days, the guardian must file a notice of acceptance of appointment with the court, a process that requires notice be given to the non-appointing parent and any other person having care and custody over the minor. Minn. Stat. § 524.5-202(d). That notice must include a statement concerning the right of those

12

notified to terminate the appointment. *Id.* Until the court confirms the appointment, the non-appointing parent may terminate the appointment by simply filing written objections. Minn. Stat. § 524.5-203. The filing of such objections is considered a petition to appoint an emergency or temporary guardian. *See id.*; Minn. Stat. § 524.5-204 (describing the procedures for the appointment of an emergency or temporary guardian).

The process just described is precisely what Meyer experienced, with the minor exception that the state probate court initially failed to recognize that Meyer's objection to A. Lindsay's appointment terminated it by operation of law—an error that was quickly remedied on appeal. *See supra* Part I. Meyer offers no authority, and the Court cannot find any, that supports his contention that this process is constitutionally deficient.

**2. Minnesota's Uniform Child Custody Jurisdiction and Enforcement Act**

Meyer challenges the procedures used to determine whether a state court may exercise continuing jurisdiction over a child custody matter under Minn. Stat. § 518D.202(a). (FAC at ¶ 545.C.) Meyer claims that this statutory provision violates the Equal Protection Clause because it allows courts to accept "weak" evidence, such as affidavits. (*Id.*) The R&R recommended dismissing this claim because § 518D.202(a) did not create any suspect classifications and thus did not implicate equal protection concerns. (R&R at 26–27.) Meyer now objects that the R&R is "incomplete" because he was "treated differently from the rest." (Objs. at 7.) Meyer makes no effort to explain how he was treated differently from anyone else or how Minn. Stat. § 518D.202(a) was used to treat him unequally. Meyer's objection is therefore overruled and the Court

13

adopts the thorough analysis of the R&R in rejecting his constitutional challenge to this statute.

### D. Objections Related to Alleged Fact Disputes

Meyer argues that the R&R improperly decided issues he sees as disputed questions of fact that should be resolved by a jury. (*See* Objs. at 8–11.) Primarily, Meyer contends that there are fact disputes related to whether equitable tolling might save many of his claims that are otherwise time-barred. (*See id.* at 8–9.) The R&R rejected Meyer's arguments related to equitable tolling because he failed to show that he diligently pursued his claims, or that Defendants made any efforts to conceal those claims from him. (R&R at 8–10, 11.) The failure to produce competent, admissible evidence is distinct from those situations where such evidence creates a fact question. Meyer's failure to produce evidence that supports equitable tolling—such as false or misleading statements by Defendants, or matters outside his control that prevented him from discovering his claims—is fatal at this stage of litigation and requires that his time-barred claims be dismissed. *See Ingrassia*, 825 F.3d at 896; *Walz*, 779 F.3d at 844; *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1033 (8th Cir. 2005). This Court previously addressed Meyer's similar arguments related to equitable tolling and incorporates that reasoning by reference. (*See* August 5 Order at 13–15.)

## III. ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Objection to the Magistrate's Report and Recommendation [Doc No. 525] is **OVERRULED**.

2. The Report and Recommendation of Magistrate Judge Bowbeer dated May 26, 2017 [Doc. No. 524] is **ADOPTED**.

3. Defendant Ekola's Motion for Summary Judgment [Doc. No. 448] is **GRANTED**.

4. Defendants Allan and Diane Lindsay's Motion for Summary Judgment [Doc. No. 503] is **GRANTED**.

5. All claims against J. Does 4, 5, 6, 7, 8, 9, 21, 31, 32, 34, 35, 36, 38, 39, 47, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, and 91 are **DISMISSED WITHOUT PREJUDICE**, pursuant to Federal Rule of Civil Procedure 4(m).

6. The Report & Recommendation of Magistrate Judge Bowbeer dated December 19, 2016 [Doc. No. 435] is **ADOPTED**.

7. All claims against Defendant Jean Peterson are **DISMISSED WITHOUT PREJUDICE**.

8. Plaintiff's Objection [Doc. No. 444] to the Order of Magistrate Judge Bowbeer dated December 15, 2016 is **DENIED AS MOOT**.

9. The Order of December 15, 2016 [Doc. No. 434] is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 13, 2017                            s/Susan Richard Nelson
                                                                       SUSAN RICHARD NELSON
                                                                         United States District Judge